**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert MARTINEZ, Jr., Defendant–Appellant.**

No. 94–3427.

United States Court of Appeals, Tenth Circuit.

Feb. 22, 1996.

Thomas M. Bradshaw (Daniel O. Herrington, also of Armstrong, Teasdale, Schlafly & Davis, Kansas City, Missouri, with him on the briefs), for Defendant–Appellant.

Tanya J. Treadway, Assistant United States Attorney (Randall K. Rathbun, United States Attorney, Kansas City, Kansas, with her on the brief), for Plaintiff–Appellee.

Before EBEL, LOGAN and BRISCOE, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Robert Martinez, Jr. appeals his conviction and sentence on fifteen counts of bribery, in violation of 18 U.S.C. 201(b)(1)(A), fifteen counts of aiding and abetting supplementation of a government employee's salary, in violation of 18 U.S.C. § 209, and one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 371. The district court sentenced him to thirty months in prison and imposed a $5341 fine.

On appeal, defendant contends that the district court erred in (1) excluding testimony to impeach a government witness; (2) allowing use of a prior inconsistent statement in violation of Fed.R.Evid. 801(d)(1)(B); (3) refusing to make a pretrial ruling addressing the admissibility of Fed.R.Evid. 609(a)(1) evidence; (4) denying a motion for severance; and (5) enhancing defendant's sentence because his offense involved more than one bribe.

In April 1990, defendant worked as marketing director at Bowling Green Hospital of Houston, Texas (Bowling Green), a private, for-profit psychiatric hospital. At a conference for Employee Assistance Program (EAP) coordinators he met Louis Garcia, an EAP coordinator for the U.S. Postal Service.[1] Garcia visited Bowling Green in April 1990, and discussed Bowling Green's Hispanic Track Program (HTP) with defendant and the hospital's acting administrator. The defense presented evidence that Bowling Green contracted to pay Garcia $3500 per month in exchange for a minimum of thirty-five hours of training, consulting and advice regarding HTP. In contrast Garcia testified that he never provided any such services and that the monthly payments were in exchange for his patient referrals.

In November 1990, defendant began working for Parkview Hospital in Topeka, Kansas (Parkview), another private, for-profit psychiatric institution. Defendant had previously worked for the Parkview administrator, codefendant Mark Jackson. Jackson hired defendant as an independent contractor with the title "regional business development coordinator," to do marketing for Parkview and Springwood Hospital in Virginia, another hospital under the same ownership. The following year, Parkview employed defendant as its Regional Service Director.

Defendant invited Garcia to visit Parkview in November 1990, where Garcia signed a consulting agreement with Parkview that recited an arrangement similar to his prior agreement with Bowling Green. The parties renewed their written agreement in October 1991 on similar terms; the renewal also gave Garcia a $3000 bonus for ten recent patient referrals to Parkview. This consulting agreement was terminated in December 1991; Garcia received his last payment from Parkview in January 1992. Garcia referred forty-three postal service employees to Parkview, including two after he received that final payment.

Both parties presented evidence concerning the level, if any, of consulting and marketing work Garcia actually performed on behalf of Bowling Green, Parkview and Springwood Hospitals. Garcia, who had pleaded guilty to one count of illegal supplementation of his salary, was given probation and a fine, and became a principal government witness. He testified that the agreement was merely an effort to legitimize payments to him for patient referrals. Defendant testified to the contrary, and detailed Garcia's work under the contract. The government's evidence established that defendant was Garcia's primary contact and was in charge of referrals, and that defendant effectuated payments to Garcia under the referral agreement and for other extras.

I

We first consider the three evidentiary issues. We review rulings excluding evidence for abuse of discretion, and "reverse only if the exclusion of the evidence is so significant that it results in 'actual prejudice' because it has a 'substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Fingado*, 934 F.2d 1163, 1164 (10th Cir.) (citations omitted), *cert. denied*, 502 U.S. 916, 112 S.Ct. 320, 116 L.Ed.2d 262 (1991). We may uphold evidentiary rulings on any ground supported by the record, "even if not relied upon by the district court." *United States v. Willie*, 941 F.2d 1384, 1396 n. 9 (10th Cir.1991), *cert. denied*, 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992).

---

1. EAPs are an in-house resource for employees seeking assistance in such areas as personal counseling, drug and alcohol dependency or abuse. The coordinator acts as a liaison to refer the employee to an appropriate professional for treatment or counseling.

### A

Defendant's wife and Larry Gomez testified on his behalf. The district court excluded portions of Mrs. Martinez' testimony as hearsay and inadmissible under Fed.R.Evid. 608(b). The district court sustained the government's Fed.R.Evid. 608(b) objection to part of Gomez' testimony, also ruling that it had marginal probative value.

According to her proffer, Mrs. Martinez would have testified about a conversation she had with Garcia in which he requested that she cash a $3500 Bowling Green check payable to Garcia. She stated that, after Garcia spoke with her supervisor at the bank where she worked, she endorsed the check, retained $350 to repay a loan to Garcia from defendant, and then defendant delivered to Garcia $400 in cash plus a $2750 money order. Mrs. Martinez also recounted a conversation she overheard between defendant and Garcia in which Garcia told defendant that as long as Garcia performed any consulting work on his own time it was not a problem for the postal service. Defendant also asserts that Gomez would have testified that Garcia represented he could legally perform consulting work on his own time, and that several years before, in 1985, Gomez and Garcia had prepared to start an EAP business.

With regard to the hearsay objection, the district court concluded there was hearsay in Mrs. Martinez' proffer recounting the events surrounding negotiation of the check from Bowling Green payable to Garcia. As to the Rule 608(b) objection, the district court held that Mrs. Martinez' proffered testimony was offered to challenge witness Garcia's credibility with extrinsic evidence that he lied about paying defendant a kickback during defendant's tenure at Bowling Green. The district court refused Gomez' testimony for the same reason: he would have impeached Garcia's credibility as to Garcia's representations that in 1985 he could legally perform consulting work on his own time.

Defendant contends that Mrs. Martinez' proffer was not extrinsic evidence, and that it rebuts Garcia's testimony establishing the inception of the conspiracy, defendant's knowledge and intent, and his demand for kickback. Defendant asserts that because the government raised the kickback issue in its case-in-chief, Mrs. Martinez' testimony that her husband did not receive a kickback is not collateral. As to her attempted recounting of Garcia's purported representations he could legally perform consulting work, defendant argues that Mrs. Martinez' testimony was not offered for the truth of Garcia's representations and therefore is not hearsay; and that these statements would have negated defendant's state of mind and intent to commit a crime. Defendant argues Gomez' testimony would establish that Garcia held himself out as available to perform consulting work on his own time.

The government responds that it primarily objected to Mrs. Martinez' testimony as hearsay. It contends also that the defense proffer established that her testimony was offered for the purpose of proving the truth of the statements, *i.e.*, that the cash Mrs. Martinez retained merely repaid a loan and was not a kickback. Finally, the government argues that Rule 608(b) also precludes Mrs. Martinez' testimony: whether the $350 she retained was a kickback to defendant is collateral to the question whether defendant committed bribery while working at Bowling Green.

We agree with the district court that Mrs. Martinez' testimony about the Bowling Green check contained significant hearsay: of Garcia's requests and statements about a loan repayment to defendant; of defendant's statements requesting her to cash the check, wire funds to Garcia, and defendant's activity delivering the cashier's check and cash to Garcia.

■ Mrs. Martinez' proffered testimony that Garcia represented that his work with Parkview was not a problem with the postal service, however, is not hearsay. Defendant ultimately testified to the substance of his wife's proffer. Defendant argues, however, that this testimony would have been more believable from his wife than himself because of his criminal record. Nonetheless, defendant has not shown that he suffered actual prejudice because the district court disallowed this portion of his wife's testimony. We are satisfied that in the course of approx-

imately a three-week trial, this single piece of cumulative evidence did not influence the jury's guilty verdict.

■ We also agree with the district court's application of Rule 608(b), which generally excludes extrinsic evidence of a witness' credibility. Fed.R.Evid. 608(b) reads as follows:

(b) *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Thus, the rule allows cross-examination of witnesses about specific conduct if those incidents reflect on the witness' character for truthfulness. However, "[i]f the witness denies making a statement on a matter classified as collateral, his examiner must take his answer—that is, he may not prove the making of the statement by extrinsic evidence." *United States v. Young,* 952 F.2d 1252, 1259 (10th Cir.1991).

The Bowling Green check and Gomez episodes were extrinsic to the crimes charged and properly excluded. Garcia endured lengthy cross-examination from both defense counsel concerning his ethical obligations as an EAP coordinator, the kickback incident, and inconsistencies between his trial testimony, grand jury testimony and written statement. Rule 608(b) brings finality to this process by generally excluding extrinsic evidence for the purpose of further attacking witness credibility.

B

■ We next consider whether allowing Garcia to characterize his grand jury testimony as truthful was inadmissible hearsay. Although we review decisions admitting evidence for abuse of discretion, *United States v. Elkins,* 70 F.3d 81, 82 (10th Cir.1995), objections must "substantially satisf[y] the requirement of putting the court on notice" of the grounds for objection. *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 174, 109 S.Ct. 439, 452, 102 L.Ed.2d 445 (1988); Fed. R.Evid. 103(a)(1).

The colloquy at issue reads:

Q. Did you also testify before the grand jury?

A. Yes, I did.

Q. Can you tell the jury whether or not you provided truthful answers to the grand jury questions?

. . . . .

A. Yes, I did.

. . .. . .

Q. I believe my last question to you, Mr. Garcia, was, could you tell the jury whether or not you provided the grand jury with the same detailed information as you have provided this jury?

A. No, the information that I've provided here is more detailed.

II App. 216–19 (L. Garcia Tr.).

■ At trial, defense counsel objected to this evidence "to rehabilitate a witness that hasn't been impeached," thereby prematurely bolstering his credibility. *Id.* at 218. On appeal, defendant argues the statement did not meet the requirements of Fed.R.Evid. 801(d)(1)(B) and was inadmissible hearsay. Because the objection did not notify the district court that defendant's objection was based on this rule, we review this evidentiary ruling for plain error. *United States v. Barbee,* 968 F.2d 1026, 1030–31 (10th Cir.1992).

Rule 801(d)(1)(B) reads as follows:

(d) *Statements which are not hearsay.* A statement is not hearsay if—

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declar-

ant of recent fabrication or improper influence or motive.

"Statement" is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Fed.R.Evid. 801(a).

■ The government's inquiry did not require Garcia to recount his actual assertions to the grand jury. It simply asked Garcia to draw a comparison between his grand jury and trial testimony, and describe whether the former was truthful. As such, Garcia's testimony was not hearsay. Therefore, because Garcia's prior statements were not offered we do not reach the question whether Garcia's trial testimony would have rebutted an improper motive, as required by Rule 801(d)(1)(B).

### C

Defendant next argues that the district court abused its discretion in failing to rule pretrial on the admissibility of his prior state cocaine conviction. Defense counsel filed a pretrial motion in limine to exclude evidence of defendant's two prior criminal cases: a 1986 guilty plea on Texas state charges of cocaine distribution and a guilty plea on federal charges of making a false statement in connection with a food stamp report.[2] The government argued that the district court could not rule on the admissibility of the cocaine conviction until defendant testified, allowing the district court to conduct the balancing required by Fed.R.Evid. 609(a)(1). The government also noted that the cocaine conviction would be admissible only if directly put in question by defendant's testimony that he was a law-abiding citizen; it therefore urged the district court to withhold ruling until defendant testified.

The court concluded that defendant's state cocaine case was a conviction within the contemplation of Rule 609, but deferred ruling on its admissibility until trial. The court instructed the government not to mention the cocaine conviction in voir dire or opening

statement, and to approach the bench thereafter before bringing the matter up during the trial. Defendant renewed his motion at a pretrial conference and again immediately before he testified.[3]

Defendant was the last witness to testify. He asserts that because he did not know whether the court would allow the government to cross-examine him on his state cocaine conviction, he was effectively forced to introduce the conviction himself to "draw the sting." The government contends that the district court provided defendant with significant guidance as to the admissibility of the cocaine conviction and that when defendant acknowledged the conviction on direct examination he waived his objection. We first consider whether defendant suffered prejudice because of the district court's refusal to rule before he testified.

In *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), the district court made a preliminary ruling that the defendant's prior state conviction was admissible under Rule 609(a)(1) and the defendant decided not to testify. The defendant then asserted on appeal that the district court erred in finding the prior conviction admissible. The Supreme Court held, however, that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Luce,* 469 U.S. at 43, 105 S.Ct. at 464.

■ The *Luce* Court reasoned that only when the defendant actually testifies can the district court determine whether the probative value of the evidence outweighs the "prejudicial effect to the accused." *Id.* Thus, the *Luce* Court acknowledged that even if a district court makes a pretrial ruling on defendant's proffered testimony, it may later alter that ruling in light of the actual trial testimony. *See id.* at 41–42, 105 S.Ct. at 463–64.

■ Further, district courts are not required to make definitive pretrial rulings on

---

**2.** The district court's pretrial order held the food stamp conviction was admissible; this issue is not part of this appeal.

**3.** Defendant also asserts that counsel represented that defendant's testimony would not open the door for impeachment with the cocaine conviction, but the district court still refused to rule. That portion of the colloquy is not in the record.

motions in limine seeking to exclude Fed. R.Evid. 609(a)(1) evidence. *See United States v. Mejia–Alarcon,* 995 F.2d 982, 987 n. 2 (10th Cir.) (acknowledging that any pretrial rulings involving Rule 609(a)(1) are necessarily preliminary because the required balancing may be reassessed as the evidence actually comes in), *cert. denied,* —— U.S. ——, 114 S.Ct. 334, 126 L.Ed.2d 279 (1993); *Luce,* 469 U.S. at 41–42, 105 S.Ct. at 463–64. A district court "may change its ruling at any time for whatever reason it deems appropriate." *Jones v. Stotts,* 59 F.3d 143, 146 (10th Cir.1995). The district court did not abuse its discretion in refusing to rule pretrial or before defendant testified.

The related question is whether defendant's introduction of this prior conviction in his direct testimony waived his Rule 609 objection. Other courts have treated a defendant's objection as waived under similar facts. *See United States v. Levesque,* 681 F.2d 75, 79–80 (1st Cir.), *cert. denied,* 459 U.S. 1089, 103 S.Ct. 574, 74 L.Ed.2d 936 (1982); *United States v. Cobb,* 588 F.2d 607, 611–13 (8th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979).

 We cannot speculate whether the government would have cross-examined defendant about his cocaine conviction. By testifying, the defendant denied the district court the opportunity to rule had the government attempted to cross-examine him about that conviction. We cannot now weigh the prejudicial effect of that evidence against its probative value. *See Mejia–Alarcon,* 995 F.2d at 987 n. 2.

## II

 Defendant argues that the district court erred in denying his motion for severance from trial with codefendant Jackson. We review for abuse of discretion a district court order denying a motion for severance. *United States v. Savaiano,* 843 F.2d 1280, 1299 (10th Cir.), *cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988).

Defendant contends that Jackson would have testified for him and exonerated him of any wrongdoing in the Parkview consulting contract with Garcia. Defendant also asserts Jackson would have testified that he created backdated documentation to support the illusion that Garcia performed work for Parkview, and that Parkview's attorneys approved the legality of the agreement.

 We evaluate seven factors when a defendant claims he needs a codefendant's testimony and seeks severance of trials:

> 1) the likelihood that the codefendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of a severance on judicial administration and economy; 7) the timeliness of the motion.

*United States v. McConnell,* 749 F.2d 1441, 1445 (10th Cir.1984).

 As a general rule, persons indicted together are tried jointly. *United States v. Rinke,* 778 F.2d 581, 590 (10th Cir.1985). The defendant seeking severance carries the burden of establishing clear prejudice if tried with another defendant. *United States v. Cox,* 934 F.2d 1114, 1119 (10th Cir.1991). A defendant must show actual or threatened deprivation of his right to a fair trial. *United States v. Troutman,* 814 F.2d 1428, 1447 (10th Cir.1987). Merely asserting a heightened chance of acquittal or the negative "spillover effect" of evidence against a codefendant, *United States v. Cardall,* 885 F.2d 656, 667–68 (10th Cir.1989), is insufficient to warrant severance. *See also* Fed.R.Crim.P. 14.

 Here, the district court concluded that Jackson's purported[4] testimony lacked substance, was cumulative of defendant's own

---

4. Defendant represents in doc. 196, fn. 1, that Jackson's affidavit was forthcoming. We found none in the record; *see also* Appellee's Supp. App. 42 (District Court Memorandum and Or-

der). Further, contrary to defense counsel's argument, the government characterized the bulk of Jackson's admissions as inculpatory of defendant. *See* I App. doc. 196, ex. B.

testimony, and too self-serving to be credible. We agree. Defendant asserts that codefendant Jackson decided during trial not to testify, contrary to his previous representations. But even if Jackson had testified as defendant represented, that evidence would not have addressed the essential nature of Garcia's agreement as a sham to camouflage payments for patient referrals. Losing the opportunity to call Jackson as a witness did not undermine defendant's right to a fair trial. The district court's refusal to grant a severance was not an abuse of discretion.

### III

■ Finally, defendant challenges the district court's two-level enhancement of defendant's offense level because his conduct involved more than one bribe. We review de novo a district court interpretation of the Sentencing Guidelines, accepting that court's findings of fact unless clearly erroneous. *United States v. Evans*, 985 F.2d 497, 499 (10th Cir.), *cert. denied*, 508 U.S. 965, 113 S.Ct. 2942, 124 L.Ed.2d 690 (1993).

The applicable portion of the Sentencing Guidelines reads:

> (b) Specific Offense Characteristics
>
> > (1) If the offense involved more than one bribe or extortion, increase by 2 levels.

U.S.S.G. § 2C.1.1(b)(1). Application Note 6 to that section states:

> Subsection (b)(1) provides an adjustment for offenses involving more than one incident of either bribery or extortion. Related payments that, in essence, constitute a single incident of bribery or extortion (*e.g.*, a number of installment payments for a single action) are to be treated as a single bribe or extortion, even if charged in separate counts.

The district court found that Garcia received more than one bribe for performing more than one act. "The conspiracy agreement was not for a final fixed sum paid in regular installments in return for a single action from Garcia." II Supp.App. doc. 223 at 4. The court relied upon the open-ended nature of the conspiracy and monthly installments payable for an average of nearly three monthly referrals. The court also noted Garcia's bonus one month for extra referrals, and the noncash compensation he received, *i.e.*, trips, a telephone calling card and cellular telephone.

Defendant asks us to view the conspiracy agreement as the single incident under which Garcia received multiple installment payments. Defendant asserts that Garcia received $3000 checks from Parkview without regard to having made referrals that month, and that the monthly payment was fixed and nonnegotiable. He further argues that he had no direct involvement in issuing Garcia's monthly checks. The government responds that Garcia received numerous bribes under a single conspiracy agreement to pay Garcia as long as he made referrals. These bribes came from Parkview as well as Bowling Green and Charter–By–The–Sea Hospitals, and involved two separate written agreements with Parkview.

This circuit has not decided how to differentiate between related payments for a single bribe and multiple acts of bribery. However, in *United States v. Kahlon*, 38 F.3d 467 (9th Cir.1994), the Ninth Circuit addressed the application of § 2C1.1(b)(1). That defendant was convicted of conspiracy and three counts of bribery. The district court increased his offense level under § 2C1.1(b)(1). The bribes corresponded to three separate work applications under the umbrella of a larger conspiracy. The *Kahlon* court upheld the sentencing court's conclusion that "although the payments were part of a larger conspiracy they were not installment payments for a single action." 38 F.3d at 470. *Cf. United States v. Morales*, 11 F.3d 915, 917 (9th Cir.1993) (concluding that when payments came at varying intervals and amounts, and from different sources, payments were different bribes).

■ The district court made factual findings that the payments to Garcia were not installments for a single "incident" or "act." Garcia received bribes for ongoing patient referrals, under the guise of a consulting contract. The parties renewed that contract once, but it was terminable on thirty days notice. Defendant and Jackson expected

three referrals per month; Garcia averaged slightly less than that over approximately fifteen months time. The $3000 payments occurred at approximately two- to five-week intervals. The evidence supports the district court's finding that Garcia received payments "as long as both sides wanted to perform." II Supp.App. doc. 223 at 4–5. The district court's conclusion that these periodic payments embodied separate bribes was not clearly erroneous.

AFFIRMED.