UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RAFAEL RUBALCAVA-
HERNANDEZ,

    Defendant-Appellant.

No. 98-4108
(D.C. No. 96-CR-161-01)
(D. Utah)

---

ORDER
Filed November 9, 1999

---

Before **KELLY**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges.

---

Appellant's Motion to Correct Opinion is granted. The first sentence under the heading "The Geneva Convention" on page 5 of the order and judgment is corrected to read: "Rubalcava-Hernandez's argument that he is entitled to sentencing under the Geneva Convention merits little discussion." A corrected order and judgment is attached.

Entered for the Court,
Patrick Fisher, Clerk of Court

By:
Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 13 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RAFAEL RUBALCAVA-
HERNANDEZ,

Defendant-Appellant.

No. 98-4108
(D.C. No. 96-CR-161-01)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges.

Rafael Rubalcava-Hernandez was indicted for the possession of cocaine, methamphetamine, and heroin with intent to distribute, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. After a jury trial, Rubalcava-Hernandez was convicted of the charges and then sentenced by the district court to 121 months imprisonment. We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

In August 1996, local law enforcement officers in Salt Lake City, Utah, acting on surveillance and information from a confidential informant, obtained a warrant to search a residence implicated in unlawful drug trafficking. While executing the warrant, officers knocked on the door twice and announced their presence in both English and Spanish. No one answered, but the officers heard shuffling within the residence. Twenty to thirty seconds after their first knock, the officers employed a battering ram to force the door open and entered the house. Once inside, the officers heard someone running down stairs in the rear of the residence. After tracking the sounds, officers discovered Rubalcava-Hernandez in a basement storage area with a white powdery substance on his pants and shirt. A subsequent search of the kitchen and basement revealed approximately 29 kilograms of cocaine, eight kilograms of methamphetamine, 240 grams of heroin, $41,399 in U.S. currency, a firearm, drug paraphernalia (such as packaging materials, scales, and drug spoons), numerous "pay-owe" sheets, and an array of Polaroid photographs. Some of the photographs depicted Rubalcava-Hernandez holding a weapon while posing in front of money and drugs lying on the kitchen table. Law enforcement officials later discovered Rubalcava-Hernandez's fingerprints on several packages containing cocaine.

One week after the search, a federal grand jury indicted Rubalcava-

Hernandez on three counts of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. A superseding indictment was returned in November 1996 charging both Rubalcava-Hernandez and Elmer Salvador-Rodriguez with the same offenses listed in the original indictment. In April 1997, Rubalcava-Hernandez sought a declaratory judgment that the United States was in a state of war with respect to drugs and that his prosecution was subject to the provisions of the Geneva Convention Relative to the Treatment of Prisoners of War. The district court denied the motion on the record following a hearing. In July 1997, Rubalcava-Hernandez filed a "Motion For Application Of The Geneva Convention." Record on Appeal ("ROA"), Vol. I, Doc. 60. The district court held a hearing on the matter and denied the motion. Rubalcava-Hernandez filed an interlocutory appeal of the district court's ruling, which we dismissed as jurisdictionally defective on February 3, 1998.

Rubalcava-Hernandez filed three additional motions in February and March of 1998. Rubalcava-Hernandez sought in these motions to (1) sever his trial from that of Salvador-Rodriguez; (2) compel disclosure of the government's confidential informant; and (3) suppress all evidence and dismiss the charges against him for discovery abuse. The district court denied Rubalcava-Hernandez's motion to sever based on its untimely filing and the absence of

potential prejudice. The court denied the motion to disclose the confidential informant based on the "lack of need shown by the defendant." Id., Doc. 114. The court denied Rubalcava-Hernandez's motion to suppress and to dismiss for reasons unspecified in the record. Trial commenced on April 1, 1998. Two days later, the jury convicted Rubalcava-Hernandez and Salvador-Rodriguez of all three counts charged in the superseding indictment. In June 1998, the district court sentenced Rubalcava-Hernandez to 121 months imprisonment.

II.

Rubalcava-Hernandez raises six issues on appeal. He contends that the district court erred by (1) failing to apply the Geneva Convention and to classify him as a prisoner of war; (2) refusing to sever his trial from the trial of Salvador-Rodriguez; (3) failing to compel disclosure of the government's confidential informant; (4) admitting into evidence crime scene photographs that the government did not timely disclose; (5) denying his motion to suppress all evidence seized in a purportedly illegal search of the residence; and (6) refusing to reduce his sentence for acceptance of responsibility. [1]

_____

[1] Rubalcava-Hernandez identifies several other points in his "statement of issues presented on appeal," but does not develop them in the argument section of his brief. The failure to adequately brief an issue constitutes a waiver. See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir. 1995) ("[I]t is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for appeal.") (citation and
(continued...)

*The Geneva Convention*

Rubalcava-Hernandez's argument that he is entitled to sentencing under the Geneva Convention merits little discussion. The rhetorical "war on drugs" is an amalgam of various measures designed to reduce the production and consumption of illegal narcotics. It is not the type of "declared war" or "armed conflict" between treaty signatories envisioned by the Convention. See Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, art. 2, 6 U.S.T. 3316, 75 U.N.T.S. 135 (1950 WL 7478 (TIA) at *1). Furthermore, Rubalcava-Hernandez is not a "prisoner of war" as defined by the Convention. See id. art. 4 (1950 WL 7478 (TIA) at *2-*3). He is not a member of (or otherwise associated with) the armed forces, a militia, or a resistance movement in Central America or the United States.

*Severance*

Rubalcava-Hernandez contends that the district court improperly denied his motion for severance. He argues in essence that prosecutors failed to link him to the drug distribution ring and that the evidence inculpating Salvador-Rodriguez should not have been "paraded" before the jury. A trial court's denial of a

---

[1](...continued)
internal quotation marks omitted).

-5-

motion to sever will not be disturbed on appeal unless there is an affirmative showing of an abuse of discretion. United States v. Morales, 108 F.3d 1213, 1219 (10th Cir. 1997).

Establishing an abuse of discretion in this context is no mean feat. To make such a showing, "the defendant must show actual prejudice resulted" from the denial of the motion to sever. Id.; see also United States v. Martinez, 76 F.3d 1145, 1152 (10th Cir. 1996) ("The defendant seeking severance carries the burden of establishing clear prejudice if tried with another defendant."). Moreover, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993); see also Martinez, 76 F.3d at 1152 ("As a general rule, persons indicted together are tried jointly."). Such trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro, 506 U.S. at 537 (citation and internal quotation marks omitted). Thus, when two or more defendants properly have been joined pursuant to Federal Rule of Criminal Procedure 8(b), "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539. As a corollary, "[n]either a mere allegation that [a] defendant would have a better chance of acquittal in a separate trial, nor a

complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance." Morales, 108 F.3d at 1219 (citation omitted); accord Martinez, 76 F.3d at 1152.

Judged by these standards, the district court's denial of Rubalcava-Hernandez's motion to sever cannot be deemed an abuse of discretion. First, the government did in fact present independent evidence linking Rubalcava-Hernandez to the controlled substances in the residence. That evidence included testimony that Rubalcava-Hernandez was found in the house with a white powdery substance on his clothing, surrounded by a substantial amount of illegal narcotics. It also included photographs of Rubalcava-Hernandez posing in front of the drugs while carrying a firearm. Second, as Morales and Martinez make clear, allegations of a "spillover effect" or a diminished chance of acquittal are generally insufficient to justify severance. While it is true that severance occasionally may be warranted when "many defendants are tried together in a complex case and they have markedly different degrees of culpability," see Zafiro, 506 U.S. at 539, this case does not fit that description. Third, any risk of prejudice was reduced by the district court's jury instructions. The court advised jurors that they should consider each defendant (and each count) separately, and that "[a] verdict of guilty as to one of the defendants does not by itself require a

guilty verdict as to the other defendant." ROA, Vol. I, Doc. 123, Instruction 14. The denial of a motion to sever is not improper when the risk of prejudice is "of the type that can be cured with proper instructions," because "juries are presumed to follow" directives from the court.    Zafiro , 506 U.S. at 540-41.

### *Disclosure of the Confidential Informant*

Rubalcava-Hernandez also challenges the district court's refusal to identify the government's confidential informant. He principally argues that the informant could have testified that she (or he) did not become aware of Rubalcava-Hernandez until after the search warrant was executed. Rubalcava-Hernandez maintains that this testimony would have bolstered his defense by demonstrating that the police never suspected him of drug trafficking prior to his arrest. Rubalcava-Hernandez likewise claims that the informant's testimony would have illustrated that his presence in the house at the time of the search was simply an unfortunate coincidence.

We review a district court's denial of a motion to disclose the identity of a confidential informant for an abuse of discretion.    United States v. Gordon   , 173 F.3d 761, 767 (10 th Cir.), cert. denied , 1999 WL 496159 (Oct. 4, 1999). As we explained in  Gordon ,

> A defendant seeking to force disclosure of an informant's identity
> has the burden to show the informant's testimony is relevant or

essential to the fair determination of defendant's case. In determining whether to require disclosure, a court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. The court conducts this balancing in light of the crime charged, the possible defenses, and the significance of the informant's testimony. Where it is clear that the informant cannot aid the defense, the government's interest in keeping secret [the informant's] identity must prevail over the defendant's asserted right of disclosure.

Id. (citing Roviaro v. United States, 353 U.S. 53, 62 (1957) and United States v. Sinclair, 109 F.3d 1527, 1538 (10th Cir. 1997)) (internal quotation marks omitted); see also United States v. Leahy, 47 F.3d 396, 398 (10th Cir. 1995) (stating that the testimony of a confidential informant "must be shown to be valuable to a defendant; mere speculation is not enough").

Even if we accept Rubalcava-Hernandez's arguments at face value, we cannot conclude that the district court committed reversible error. First and foremost, the informant's testimony would have been cumulative. Other witnesses testified that Rubalcava-Hernandez was not a target of any investigation and was not known to law enforcement officials prior to the search. See, e.g., ROA, Vol. VI, at 13-14, 20-25, 30-32; Vol. V, at 78, 127-28, 144. Furthermore, Rubalcava-Hernandez does not suggest that the informant was present at the time of the search or otherwise could have provided additional details about his arrest. We have repeatedly refused to compel disclosure when an informant "has limited information, was not present during commission of the

offense, and cannot provide any evidence that is not cumulative or exculpatory."
See Gordon, 173 F.3d at 767-68 (collecting cases).

### *Admission of the Crime Scene Photographs*

Rubalcava-Hernandez next contends that he was prejudiced by the government's introduction of several photographs of the crime scene. These photographs, which were taken following Rubalcava-Hernandez's arrest, showed the interior of the residence and the items seized during the search. Rubalcava-Hernandez argues that the district court should have excluded the photographs because the government did not provide him with copies until the day before trial. We review a district court's decision to admit or exclude evidence under an abuse of discretion standard. United States v. McIntosh, 124 F.3d 1330, 1338 (10th Cir. 1997); see also United States v. Baker, 30 F.3d 1278, 1281 (10th Cir. 1994) ("Evidentiary rulings are committed to the discretion of the trial court and are only reviewed for an abuse of that discretion.") (citation omitted).

Once again, we find no abuse of discretion. We conclude that the admission of the photographs was not prejudicial. Indeed, Rubalcava-Hernandez does not even appear in the photographs, which simply depict the crime scene. Rubalcava-Hernandez does not dispute that the government delivered police reports to him nearly two years before trial. These reports described the crime

scene in detail and outlined where each item of evidence was discovered during the search. Rubalcava-Hernandez's claims of prejudice thus fall woefully short. [2]

*The Search of the Residence*

Rubalcava-Hernandez maintains that the district court erred by denying his motion to suppress. He apparently contends that the search of the residence was invalid under the Fourth Amendment because the officers executing the warrant had no basis for believing that a human being inside the house had refused them entry. See Appellant's Brief at 40-41 (asserting that the shuffling noises officers heard before coming in to the house "could have been a dog, a bird in a cage, or the newspaper rustling under the wind" and that none of these objects had the capacity to refuse the officers' request for entry). The reasonableness of a search and seizure under the Fourth Amendment is a question of law subject to de novo review. United States v. Jenkins, 175 F.3d 1208, 1212 (10th Cir.), cert. denied 1999 WL 623883 (Oct. 4, 1999). We review findings of fact in connection with

---

[2] Rubalcava-Hernandez also asserts that the photographs of the crime scene "mysteriously disappeared" after the first day of trial. Rubalcava-Hernandez cannot cite to any evidence in the record to support this claim, and does not suggest that the government was responsible for the alleged disappearance. The government suggests (also without citations to the record) that Rubalcava-Hernandez's sister removed the photographs from the courthouse during trial. In any case, the record before this court is wholly insufficient to establish that Rubalcava-Hernandez was prejudiced by this purported turn of events.

the denial of a motion to suppress for clear error.    Id.

Rubalcava-Hernandez's objection to the district court's ruling is without merit. There is no bright-line rule that officers who have knocked and announced their presence cannot enter a dwelling to execute a warrant until someone inside the home expressly refuses to let them in. An implicit or constructive refusal may be adequate, and even then a "flexible requirement of reasonableness" governs.    Wilson v. Arkansas  , 514 U.S. 927, 934 (1995);    see also id. (holding that in some circumstances it may be reasonable for officers to enter a residence without announcing their presence at all);        Richards v. Wisconsin , 520 U.S. 385, 394 (1997) (stating that "no-knock" entry may be permissible when the police "have a reasonable suspicion that knocking and announcing their presence . . . would be dangerous or futile, or that it would inhibit the effective investigation of the crime"). Here, officers waited 20 to 30 seconds after knocking and announcing their presence before forcing their way into the house. The district court's conclusion that no Fourth Amendment violation occurred was hardly unreasonable.    Cf. Jenkins , 175 F.3d at 1211, 1215 (upholding the validity of a search after officers knocked and announced their presence, received no response, waited 14 to 20 seconds, and then forced open an interior door with a battering ram).

*Acceptance of Responsibility*

Rubalcava-Hernandez lastly contends that the district court should have reduced his sentence based on his acceptance of responsibility. We review a district court's refusal to depart downward under United States Sentencing Guideline ("U.S.S.G.") § 3E1.1 for clear error. See United States v. Mitchell, 113 F.3d 1528, 1533-34 (10th Cir. 1997) (citing United States v. Gacnik, 50 F.3d 848, 853 (10th Cir. 1995)), cert. denied, 118 S. Ct. 726 (1998). Because the sentencing judge "is in a unique position to evaluate the defendant's acceptance of responsibility," his or her determination "is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n.5).

The district court did not err by refusing to depart downward. Rubalcava-Hernandez never accepted responsibility for the drug distribution activities that led to his conviction. "To receive a sentence reduction for acceptance of responsibility, the defendant must show 'recognition and affirmative acceptance of personal responsibility for his criminal conduct.'" Mitchell, 113 F.3d at 1534 (quoting United States v. McAlpine, 32 F.3d 484, 489 (10th Cir. 1994)). At most, Rubalcava-Hernandez admitted that he was a "houseboy" at the residence and that he had his picture taken in front of the drugs. Only in "rare situations" can a

-13-

defendant "clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." U.S.S.G. § 3E1.1, comment. (n.2). Rubalcava-Hernandez made no such a showing in this case. Accordingly, we AFFIRM Rubalcava-Hernandez's conviction and sentence.

Entered for the Court

Mary Beck Briscoe
Circuit Judge
