**UNITED STATES of America, Plaintiff,**

v.

**William Leonard PICKARD and Clyde Apperson, Defendants.**

**No. 00–40104–01/02–RDR.**

United States District Court, D. Kansas.

Nov. 26, 2002.

---

William K. Rork, Rork Law Office, Mark L. Bennett, Jr., Bennett, Hendrix & Moylan, L.L.P., Topeka, KS, for Defendants.

Gregory G. Hough, U.S. Attorney, Office of United States Attorney, Topeka, KS, for Plaintiff.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

On November 8, 2002 the court held a hearing to consider the pending pretrial motions. At that time, the court considered the following motions: (1) defendant Pickard's request of pretrial conference pursuant to Classified Information Procedures Act (CIPA) (Doc. # 165); (2) defendant Pickard's motion in limine (Doc. # 101); (3) defendant Pickard's pro se motion for pretrial conference pursuant to CIPA (Doc. # 170); (4) defendant Apperson's motion for determination of admissibility of testimony and set a date certain for testimony of defendant's witnesses (Doc. # 204); (5) government's second motion in limine regarding Gordon Todd Skinner (Doc. # 160); (6) government's motion in limine regarding "Infrared"

(Doc. # 173); and (7) government's motion for disclosure of joint defense agreement (Doc. # 180). Following the hearing, defendant filed a notice of defense based upon public authority pursuant to Fed. R.Crim.P. 12.3. The government responded with a motion in limine concerning the proposed public authority defense. The court will also now consider this motion. Having carefully considered the testimony and arguments presented by the parties, the court is now prepared to rule.

### DEFENDANT PICKARD'S REQUEST FOR PRETRIAL CONFERENCE PURSUANT TO CLASSIFIED INFORMATION PROCEDURES ACT (CIPA) (Doc. # 165) and DEFENDANT PICKARD'S PRO SE MOTION FOR PRETRIAL CONFERENCE PURSUANT TO CIPA (Doc. # 170) [1]

In these motions, defendant Pickard seeks a pretrial conference pursuant to CIPA, 18 U.S.C.App. III § 2. He suggests that the court needs to comply with the procedures outlined in CIPA because he intends to disclose classified information at the trial of this case.

The court dedicated most of the hearing on November 8th to these motions. The defendant offered testimony in support of this request, and the parties offered argument on it. The defendant has hinted for some time in this case that he intended to offer classified information. He, however, was never clear about exactly what information he sought to offer and why. The court now believes that it has an understanding of where the defendant is headed and how he expects to get there.

In order to fully understand the present circumstances, the court finds it necessary to engage in an exhaustive review of the background in this action. Throughout the early course of this case, defendant Pickard was not clear about the nature of his defense. At the omnibus hearing, he listed a number of defenses that he might rely upon at trial. The motions that were subsequently filed by Pickard failed to provide the court with any guidance about his potential defense. He did request in an early motion for discovery, inter alia, the following:

[T]he defendant has had a long-standing, cooperative relationship with the DEA and other governmental agencies. Accordingly, the defendant would request that he be allowed access to any information in the government's possession regarding these cooperative actions. If this information falls, in part, under Rule 404(b) type evidence of "other crimes, wrongs, or acts" the government "shall provide reasonable notice in advance of trial" of the intent to use the evidence under the Rule. *U.S. v. Kern,* 12 F.3d 122 (8th Cir.1993). Even if the government opts not to use this evidence in its case-in-chief, such information should be considered exculpatory under Brady, supra, and subsequent supporting law.

This request led to a search by the government to determine if Pickard had ever been a confidential informant for any federal law enforcement agency. The request also led Pickard to provide the court with some additional information on some of his purported activities with the government. The materials referred to an "Operation Infrared," a purported government plan to target Afghanistan General Abdul Rashid Dostum, who had been heavily involved in heroin trafficking for a number of years. This information, however, was provided without description concerning its

---

1. As part of these motions, defendant Pickard had also sought a continuance. However, the motion for continuance was directed at the scheduled trial date of July 22, 2002. Prior to July 22nd the court granted a continuance for reasons unrelated to CIPA. Therefore, the court now considers this aspect of these motions as moot.

relevance to this case. In fact, Pickard had suggested to the court that his relationship with the DEA as a confidential informant should be reviewed in connection with the motion to suppress that he had filed. This produced the following order issued by the court on July 25, 2001:

This case is now before the court following an in camera review of defendant Pickard's DEA confidential informant file. Upon review of the file, the court finds nothing which is exculpatory in connection with the charges in this case. Defense counsel has requested the court to consider the file in the context of the affidavits made in support of search warrants. The court will continue to consider that issue as the subject of the search warrants is placed before the court after argument. At this time, the court is aware of nothing to support production of the file to defense counsel and shall not order it produced.

Counsel for defendant Pickard has supplied the court with other materials for an unsolicited in camera inspection. This material appears different in many respects from the material contained in the DEA file. Our review of defendant's material does not persuade us at this point that the DEA file has exculpatory value for the defendant. The court will return the materials to defense counsel at counsel's convenience or maintain the materials at defense counsel's option.

Subsequently, the government provided the court with additional information concerning Pickard's alleged association with federal law enforcement agencies. The court thereafter issued the following order on March 27, 2002:

The court has conducted an in camera review of defendant Pickard's confidential informant file with the Customs Department. The court has not found evidence that defendant Pickard performed any service for that agency after 1988. The court has not found any information in the file

which the court believes would be of material benefit to the defense in this case.

Additionally, the court is in receipt of a declaration from William McNair of the Central Intelligence Agency. Mr. McNair declares that there is no record within the CIA that defendant Pickard performed services for the CIA, although he may have offered to do so and had the offer refused.

The court has also received a copy of a letter from the Bureau of Alcohol, Tobacco and Firearms to the prosecutor in this case stating that there was no record that defendant Pickard had worked as a confidential informant for that agency.

The court further received a copy of correspondence from counsel for the National Security Agency stating that a search of thirteen databases of the agency discovered no information regarding defendant Pickard.

On the basis of this information the court shall not make any order directing that information from these files be produced to defendants.

The court has received materials from defendant which are intended for the court's review in camera. These materials include articles, pictures and resumés of activity. Perhaps these materials were transmitted to provide some context for the court's in camera review of the government files. However, while there may be inconsistencies between the information supplied by both sides, we cannot reach any different conclusion or make a different order on the basis of the materials transmitted by defendant.

On July 8, 2002, Pickard's counsel filed the instant motion. He asserted that the court needed to comply with the requirements of CIPA. He stated the following as the reason for this request:

Counsel for the accused was informed the afternoon of July 7, 2002 via voice mail of apparent rejection by this accused of recent proposals by the government for a possible agreed disposition, and informed that this accused desired to proceed with presentation of evidence under auspices of the "INFRARED" materials previously prepared by this accused and provided to various governmental officials. This accused had also referenced the materials previously provided to this Court, in camera, for consideration of the request that accompanied the same.

On July 10, 2002 Pickard filed a pro se pleading requesting a pretrial conference pursuant to CIPA. Pickard also suggested that the court needed to follow the proper procedural safeguards of CIPA. Pickard filed a pro se memorandum concerning CIPA on July 12, 2002. The memorandum did indicate that he intended to disclose classified information at trial, but, as with all previous pleadings filed by Pickard or his counsel, he failed to indicate what classified information would be disclosed or how it was relevant to his defense. The documents filed by Pickard repeatedly referred to the importance of these activities, but never suggested their connection to the instant charges.

On November 8, 2002, the court conducted a hearing on the defendant's CIPA motion. Pickard testified at length concerning his possible defense in this case. This was the first time that the court had ever heard how the prior activities connected with the present charges. During his testimony, he suggested that his defense would be based either on (1) lack of mens rea because he was performing otherwise criminal acts in cooperation with the government; (2) the public authority defense because he reasonably believed that he was acting on the authority of a public official; or (3) entrapment by estop-

pel because he was relying on the representation of a government official that his conduct was legal. At the conclusion of the defendant's testimony, defense counsel suggested that the court should now order discovery concerning the defendant's prior activities with various governmental law enforcement agencies.

On November 13, 2002 the defendant filed a notice of public authority defense pursuant to Fed.R.Crim.P. 12.3. The government responded with a motion in limine concerning this defense. In the motion, the government argued that evidence of the defendant's public authority defense should be barred.

With this background, the court shall turn to the issues surrounding CIPA and the defendant's purported defenses. The court has been placed in a difficult situation because of the misunderstandings of the defendant and his counsel concerning CIPA. CIPA provides for pretrial procedures to resolve questions of admissibility of classified information in advance of its use in open court. Under CIPA procedures, the defense must file a notice briefly describing any classified information that it "reasonably expects to disclose or to cause the disclosure of" at trial. 18 U.S.C.App. III § 5(a). Thereafter, the prosecution may request an in camera hearing for a determination of the "use, relevance and admissibility" of the proposed defense evidence. *Id.* at § 6(a). If the court finds the evidence admissible, the government may move for, and the court may authorize, the substitution of unclassified facts or a summary of the information in the form of an admission by the government. *Id.* at § 6(c)(1). Such a motion may be granted if the court finds that the statement or summary will provide the defendant with "substantially the same ability to make his defense as would disclosure of the specific classified infor-

mation." *Id.* If the court does not authorize the substitution, the government can require that the defendant not disclose classified information. See *id.* at § 6(e). However, if the government prevents a defendant from disclosing classified information at trial, the court may: (a) dismiss the entire indictment or specific counts, (b) find against the prosecution on any issue to which the excluded information relates, or (c) strike or preclude the testimony of particular government witnesses. *Id.* at § 6(e)(2). Finally, CIPA requires that the government provide the defendant with any evidence it will use to rebut the defendant's revealed classified information evidence. See *id.* at § 6(f).

■ The defendant believes that the filing of the CIPA notice allows him to now obtain discovery concerning the aforementioned defenses. We simply cannot agree. CIPA does not create any new right of or limits on discovery in the area of classified information. *United States v. Varca,* 896 F.2d 900, 905 (5th Cir.1990); *United States v. Yunis,* 867 F.2d 617, 621 (D.C.Cir.1989); see also *United States v. McVeigh,* 923 F.Supp. 1310, 1314 (D.Colo.1996) ("CIPA does not enlarge the scope of discovery or of Brady."). "Rather it contemplates an application of the general law of discovery in criminal cases to the classified information area with limitations imposed based on the sensitive nature of the classified information." *Yunis,* 867 F.2d at 621. Once a case has been brought, defense counsel must first obtain all potentially relevant classified information in the government's possession. CIPA supplements, rather than alters, the Fed.R.Crim.P. 16 discovery process. In cases involving classified information, defense counsel must ask the government, pursuant to Rule 16, for the defendant's statements, any physical and documentary evidence, and examinations and tests, just as in the usual criminal case. See, e.g., *United States v. Clegg,* 740 F.2d 16, 17 (9th Cir.1984). Before the government provides the defense with any classified documents, it may propose and move for the entry of a protective order under CIPA. 18 U.S.C.App. III § 3. The government's refusal to produce classified documents sought in discovery may be challenged, as in the usual case, with defense counsel filing a motion to compel.

As recounted previously, the defendant has never sought the production of any classified information other than perhaps his request for discovery on his cooperative activities with the DEA. Moreover, the defendant has not raised any objection to the court's rulings on any of his discovery requests. The defendant has never filed a motion to compel.

■ The court will allow the defendant to present whatever defense he believes is appropriate at trial if, of course, he has filed the proper notices where required. The court notes that the aforementioned defenses adopted by the defendant have been recognized by other courts. See *United States v. Baptista–Rodriguez,* 17 F.3d 1354, 1368 n. 18 (11th Cir.1994). However, the court will not allow the defendant to begin discovery at this late date. The defendant made it clear during the hearing with the court that he had not previously formulated any specific request concerning this discovery. At this point, the court shall allow the defendant to offer any classified material that he deems appropriate in presenting these defenses. The court believes that the defendant, through his written documents and the testimony he presented during the November 8th hearing, has adequately notified the government of his intent to use classified information pursuant to § 5 of CIPA. The court notes that the government has never suggested that the information sought to be offered by the defendant is, indeed, classified. In addition, the government has never requested an in camera

hearing for a determination of the "use, relevance and admissibility" of the proposed defense evidence. Rather, the government has only insisted that the evidence was simply not relevant or was a figment of the defendant's imagination. If the government does seek an in camera hearing for a determination of the "use, relevance and admissibility" of the proposed defense evidence because of its classified nature, then the government should do so immediately.

The court does not intend for this discussion to be interpreted as a criticism of the handling of the case by defense counsel. The court understands that the defendant generally has no obligation to disclose his defense to the court or to the government. Moreover, the court is aware that defenses may be adopted or abandoned during the course of any criminal case. The purpose of this discourse is to underscore the failure of the defendant to seek discovery concerning any of the aforementioned defenses.

Accordingly, the court does not at this time find it necessary to proceed with any of the requirements set forth in CIPA. If the government believes that the court should do so, then it should immediately advise the court.

## PICKARD'S MOTION IN LIMINE (Doc. # 101)

Pickard seeks an order precluding the government from introducing the following evidence under Fed.R.Evid. 404(b): (1) an arrest on October 19, 1976 by the San Mateo County Sheriff's Office in Redwood City, California for, inter alia, possession and sale of peyote; (2) an arrest on October 10, 1977 by San Mateo County Sheriff's Office in Redwood City, California for transportation and sale of a controlled substance; (3) an arrest on February 7, 1980 by Gainsville, Georgia police for manufacture of amphetamines; (4) an arrest of Pickard on June 11, 2000 by the DeLand,

Florida Police Department for distribution of Methylenedioxyamphetamine (MDA); and (5) an arrest on December 28, 1988 by the Mountain View, California Police Department for the possession and manufacture of LSD.

Pickard also seeks an order precluding the government from introducing the following evidence under Fed.R.Evid. 609:(1) an arrest on November 24, 1964 by the Montgomery, Alabama Police Department for forgery of checks; (2) an arrest on November 25, 1964 by the Auburn, Alabama Police Department for forgery of checks; (3) an arrest on January 28, 1965 by the United States Marshal's Service in Newark, New Jersey; (4) an arrest on May 5, 1970 by the Norwalk, California Sheriff's office for violation of federal probation/parole; (5) an arrest on October 10, 1977 by the San Mateo County Sheriff's Office in Redwood City, California for receipt of stolen property; (6) an arrest on October 10, 1987 by United States Customs Service for providing a false statement in an application for a U.S. Passport; (7) a conviction on October 27, 1987 for making a false statement on a passport application; (8) an arrest on October 10, 1987 by the San Mateo County Sheriff's Officers for providing false identification to a police officer; and (9) a conviction on January 21, 1988 for providing false identification to a police officer.

### 404(b) ISSUES

The government contends that the aforementioned matters are admissible under Rule 404(b) to show the defendant's knowledge, motive, intent and absence of mistake or accident in committing the crimes alleged in the indictment.

█ Rule 404(b) proscribes admission of evidence of prior crimes, wrongs, or acts if offered "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). Such ev-

idence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* To determine whether a prior conviction is admissible under Rule 404(b), we apply a four-part test set out in *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988):(1) the evidence must be offered for one of the proper purposes articulated by Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the trial court, upon request, must instruct the jury to consider the evidence only for the purpose for which it was admitted, as required by Rule 105. See *United States v. Wilson,* 107 F.3d 774, 782 (10th Cir.1997).

Frankly, prior to the hearing on November 8th the court was prepared to grant this aspect of the defendant's motion. The court believed that the first factor of the Huddleston analysis appeared satisfied because the evidence will be introduced for the proper purpose of using "prior drug involvement to show plan, motive or intent in a drug trafficking offense." *United States v. Sturmoski,* 971 F.2d 452, 459 (10th Cir.1992). However, the court had believed that the second factor, relevance, could not be demonstrated by the government. The Tenth Circuit has "noted that prior narcotics involvement is relevant when that conduct is 'close in time, highly probative, and similar to the activity with which the defendant is charged.'" *Wilson,* 107 F.3d at 785 (quoting *United States v. McKinnell,* 888 F.2d 669, 676 (10th Cir.1989)). There is little question that the relevance of the first three arrests noted by the government is undermined by the length of time between the prior acts and the conduct involved in the instant convictions since these arrests all occurred over twenty years ago. The Tenth Circuit has determined that even four to six years

transcends the "close in time" requirement established in *Wilson,* 107 F.3d at 785. *United States v. Becker,* 230 F.3d 1224, 1232 (10th Cir.2000), cert. denied, 532 U.S. 1000, 121 S.Ct. 1666, 149 L.Ed.2d 647 (2001). In addition to the want of temporal proximity, the similarity of these prior acts to the instant LSD charges is limited. Under Huddleston, the illicit substance involved in the prior acts is of some relevance. The other two matters, the 1988 arrest for manufacture of LSD and the 2000 arrest for the distribution of MDA, also appear to lack relevance under Huddleston. The 1988 arrest is much too old under Tenth Circuit case law even though it involves the possession of an LSD laboratory. The 2000 arrest meets the temporal requirement, but involves a different drug, MDA, and a different act, distribution.

However, after hearing the purported defenses in this case, the court is not as certain about the aforementioned discussion on the relevance and temporal requirements. The defendant intends to go back significantly into his past in order to persuade the jury that he has been a long-time operative for various governmental agencies. Given this development, the court will deny this motion at this time and reconsider it at trial.

*RULE 609 ISSUES*

■ The government has not specifically responded to this aspect of the defendant's motion. The government asks that the court not consider these issues until the beginning of cross-examination of Pickard. The court sees no problem with the government's request, but we would note the following. Most of the matters noted by Pickard appear to involve only arrests. Arrests alone, however, may not be used for the purpose of impeaching the credibility of a defendant. *United States v. Wilson,* 244 F.3d 1208, 1217 (10th Cir.), cert.

denied, 533 U.S. 962, 121 S.Ct. 2619, 150 L.Ed.2d 773 (2001). Two convictions are noted, but they are both over ten years old and will require the court to make a finding that the probative value of the convictions substantially outweighs its prejudicial effect. The court shall also address this aspect of the motion at trial. The government, of course, should not make reference to any of these matters until the court has ruled on their admissibility.

## GOVERNMENT'S MOTION IN LIMINE REGARDING "INFRARED" (Doc. # 173)/GOVERNMENT'S MOTION IN LIMINE REGARDING PUBLIC AUTHORITY DEFENSE (Doc. # 214)

In the first motion in limine, the government seeks an order barring the defendants, their counsel, and any defense witnesses from offering any evidence or making any reference direct or indirect to Operation "Infrared". The government contends that "Infrared" has nothing to do with the charges against the defendants or any legitimate defense to the charges. The government suggests that the court's prior review of certain classified materials in this case indicates that "Infrared" has no relevance here. In the other motion in limine, the government contends that the court should bar evidence of the public authority defense because Pickard's notice pursuant to Fed.R.Crim.P. 12.3 was not timely filed.

Based upon all of the information that has been presented, the court shall deny both of these motions. The court must exercise extreme caution in denying a defendant the right to present a defense. The court shall allow the defendant to present the defenses mentioned previously in this memorandum. The court agrees that the Rule 12.3 notice filed by Pickard was not timely. However, Rule 12.3(a)(3) provides that "if good cause is shown, the court may allow a party additional time to comply with any obligation imposed by this rule." Having carefully reviewed the background in this case, the court does not find that the government will be prejudiced by allowing the defendant to proceed with this defense. The government has not articulated any prejudice and the court does not detect any. Accordingly, the court shall deny both of these motions in limine.

## GOVERNMENT'S SECOND MOTION IN LIMINE REGARDING GORDON TODD SKINNER (Doc. # 160)

The government seeks an order barring the defendants, their counsel and any defense witnesses from referring to the following concerning Gordon Todd Skinner: (1) control and sale of high-powered assault rifles while on pretrial release, and after conspiring with Graham Kendall and Ed Peden to mislead the magistrate and this court by suggesting that weapons were "powder guns" and exempt from the law; (2) use of aliases and fraudulent misrepresentation in acquiring and absconding with 70–foot motor vessel, resulting in seizure by Cayman Island authorities; (3) damages awarded against Skinner as a result of the aforementioned actions, "but are fraudulently evaded by Skinner via his spurious 'trust' " and the avoidance of the United States Attorney's Office in bringing Skinner's assets to the attention of creditors recognized by the U.S. Bankruptcy Court in Tulsa, Oklahoma and the Eastern District of Louisiana; (4) providing counterfeit checks to other individuals for which he is now being sued; and (5)(a) description of himself to the security staff at a casino as a representative of a billionaire, (b) self-description to neighbors in Wamego as the largest landowner in Arizona, (c) attempt to obtain a driver's license in Wamego by stating that he was an FBI agent, (d) statements that he had large overseas accounts at Barclay's Bank

and that he had a million dollar account with Kaiser Steel.

In a previous order concerning the government's first motion in limine regarding Skinner, the court set forth in some detail the law concerning the admissibility of evidence under Fed.R.Evid. 608(b) and 609. Based upon the law set forth there, the court finds that the aforementioned matters are not admissible under Rule 609. However, we do find that each of them is admissible under Rule 608(b). The court is not persuaded by the government's arguments that these matters should be precluded under Rule 608(b). Moreover, we are not persuaded that the prejudice of these matters is outweighed by their probative value. They all appear to involve matters of fraud or misrepresentation. Accordingly, this motion shall also be denied.

## GOVERNMENT'S MOTION FOR DISCLOSURE OF JOINT DEFENSE AGREEMENT (Doc. # 180)

The government seeks an order requiring the defendants to disclose to the government the existence of any joint defense agreement that exists between the defendants and, if any such agreement exists, the nature of that agreement. At the hearing on November 8th the government admitted that this motion was moot based upon the response filed by Apperson. Accordingly, this motion shall be denied as moot.

## APPERSON'S MOTION FOR PREDETERMINATION OF ADMISSIBILITY OF TESTIMONY AND TO SET A DATE CERTAIN FOR TESTIMONY OF DEFENDANT'S WITNESSES (Doc. # 204)

Defendant Apperson seeks a determination from the court concerning the admissibility of certain evidence. Specifically, defendant Apperson requests that the court determine whether Gary Ernsdorff, King County Deputy Prosecutor from Se-

attle, Washington, and Ed Lovejoy, a pharmacist from Seattle, Washington, will be allowed to testify. He also seeks the setting of a date certain for the presentation of this testimony.

The background of this motion is as follows: The government has provided the defendants with information that Gordon Todd Skinner, a key witness for the government, represented to various people in Washington, including Ernsdorff, that he was a doctor. In this role he had requested release of a juvenile who was being held in custody for selling Ecstasy, a controlled substance. He told Ernsdorff that he had been treating the juvenile with amino acids for substance abuse. Skinner had also approached a Seattle pharmacist and attempted to get prescription medications. He told the pharmacist that he was a world-renowned researcher from Europe.

Defendant Apperson wants the court to determine if this evidence will be allowed. He suggests that this evidence is proper rebuttal evidence as impeachment evidence. The government contends that this evidence should not be allowed for several reasons. The government suggests that the court, in its discretion, should not allow the evidence under Fed.R.Evid. 608(b) because it would shift the focus of the trial to an irrelevant matter and that any probative value would be outweighed by its prejudicial effect. The government also points out that extrinsic evidence is not allowed under Rule 608(b) so the witnesses suggested by the defendant cannot be used in rebuttal.

The court believes that this evidence is only admissible under Fed. R.Evid. 608(b), i.e., as specific instances of conduct for the purpose of attacking a witness' credibility. These incidents of conduct suggest fraud by Skinner. Fraud and misrepresentation are specific instances that can be used to attack a witness'

credibility. Accordingly, the court believes that this evidence is relevant and its probative value is outweighed by its prejudicial effect. Thus, this evidence can be used on cross-examination of Skinner. However, Rule 608(b) specifically precludes the use of extrinsic evidence. See *United States v. Martinez*, 76 F.3d 1145, 1150 (10th Cir.1996) (if witness denies making particular statement on collateral matter, examiner may not introduce extrinsic evidence to prove that witness did in fact make statement). Given the state of the law in the Tenth Circuit, the court does not find that these witnesses can testify because their testimony would be extrinsic evidence. Accordingly, the court cannot allow these two witnesses to testify and, therefore, we need not establish a date for their testimony.

**IT IS THEREFORE ORDERED** that defendant Pickard's motions for pretrial conference pursuant to Classified Information Procedures Act (Doc. # # 165 and 170) be hereby denied.

**IT IS FURTHER ORDERED** that defendant Pickard's motion in limine (Doc. # 101) be hereby denied at this time and reconsidered at the time of trial.

**IT IS FURTHER ORDERED** that the government's motion in limine regarding "Infrared" (Doc. # 173) be hereby denied.

**IT IS FURTHER ORDERED** that the government's motion in limine regarding the public authority defense (Doc. # 214) be hereby denied.

**IT IS FURTHER ORDERED** that the government's second motion in limine regarding Gordon Todd Skinner (Doc. # 160) be hereby denied.

**IT IS FURTHER ORDERED** that the government's motion for disclosure of joint defense agreement (Doc. # 180) be hereby denied as moot.

**IT IS FURTHER ORDERED** that defendant Apperson's motion for predetermination of admissibility of testimony and to set a date certain for testimony of defendant's witnesses (Doc. # 204) be hereby denied.

**IT IS SO ORDERED.**