In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1092

United States of America,

Plaintiff-Appellee,

v.

Wade M. Havvard,

Defendant-Appellant.


Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 CR 43--David F. Hamilton, Judge.

Argued June 13, 2001--Decided July 18, 2001


   Before Bauer, Coffey, and Kanne, Circuit
Judges.

   Bauer, Circuit Judge.  A jury found Wade
M. Havvard guilty of one count of
possessing a firearm after a felony
conviction in violation of 18 U.S.C. sec.
922(g)(1), and the district court
sentenced him to 120 months'
imprisonment, three years' supervised
release, a $1000 fine, and a $100 special
assessment. On appeal Havvard argues that
the district court erred in admitting a
fingerprint expert's opinion that a
latent print lifted from a gun recovered
at the house where Havvard was arrested
matched an exemplar obtained from him. We
affirm.

   On June 23, 1998, Indiana State Police
officers and members of the FBI Fugitive
Task Force executed a search warrant at
the residence of Havvard's grandmother.
Law enforcement officials believed that
Havvard was currently staying there, and
when he did not respond to requests to
come downstairs, the officers searched
the home and eventually located him
hiding in a closet in a second-floor bed
room. Several firearms and rounds of
ammunition were recovered from the
second-floor bedrooms, including the bed
room where Havvard was found. A latent
fingerprint lifted from one of the
handguns was later matched to an exemplar

fingerprint obtained from Havvard.

Prior to trial Havvard moved to exclude the government's offer of expert testimony that the fingerprints matched, arguing as relevant here that the government had not established the scientific reliability of fingerprint comparisons to render such evidence admissible under Federal Rule of Evidence 702. The district court ordered a hearing based on the standards for admitting expert testimony established in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). At that hearing the government called FBI fingerprint expert Stephen Meager to explain the general process of latent print identification. Meager, who has studied the success rates of fingerprint comparisons in national research surveys, described the physical characteristics of fingerprints and detailed the three-step process by which latent prints are compared with exemplars.

According to Meager, the examiner first determines whether the flow of the ridges--the lines and grooves observable on the fingertips--follows the same pattern on both the latent print and the exemplar. During this initial phase the examiner also determines the orientation of the imprint left by the fingerprint ridges. Meager pointed out, however, that at this first level of study an examiner can only exclude prints that do not share these basic similarities; a match cannot be made without more in-depth, individualized comparison.

Next, the examiner studies each separate ridge in the fingerprint and determines its relationship to the other ridges in the print. Four elements of each ridge--location, type, direction, and relationship--are considered in the aggregate at this stage. Meager stated that this closer analysis allows the examiner to begin individualizing fingerprints and possibly match a latent print with an exemplar.

Finally, in the third phase, the examiner compares individual ridges to determine whether those in the latent print match each ridge in the exemplar. Meager explained that at this level the examiner will also compare the unique

sweat pores in each print.

Meager also testified that the error rate for fingerprint comparison is essentially zero. Though conceding that a small margin of error exists because of differences in individual examiners, he opined that this risk is minimized because print identifications are typically confirmed through peer review. Meager did acknowledge that fingerprint examiners have not adopted a single standard for determining when a fragmentary latent fingerprint is sufficient to permit a comparison, but he suggested that the unique nature of fingerprints is counterintuitive to the establishment of such a standard and that through experience each examiner develops a comfort level for deciding how much of a fragmentary print is necessary to permit a comparison.

The government presented no other witnesses, and Havvard offered no evidence. At the close of the hearing, Havvard argued that, because there is no objective standard defining when a latent print is sufficient for a comparison, fingerprint analysis is simply the subjective assessment of the individual examiner and not a scientific process that can satisfy the Daubert/Kumho standard for admission under Rule 702.

In a published entry, see United States v. Havvard, 117 F. Supp. 2d 848 (S.D. Ind. 2000), the district court concluded that because the fingerprint evidence was obviously relevant--an expert matched a latent print found on one of the firearms with Havvard's left index finger--the only issue was its reliability. See id. at 850. The district court further found that claims of the uniqueness and permanence of fingerprints are "scientific"claims because those assertions can be "falsified," id., and that much of the fingerprint comparison process is "completely objective," id. at 853. The district court also observed that the methods of comparison are easily testable such that both parties can subject prints to comparison to verify a purported match. See id. at 854. Furthermore, the district court noted that the peer-reviewed results of fingerprint comparisons, although not often published as scholarly articles, have been used in "adversarial testing

for roughly 100 years," which offered a greater sense of the reliability of fingerprint comparisons than could the mere publication of an article. See id. Emphasizing the minimal error rate of fingerprint comparisons, though acknowledging that fingerprint analysis lacks a unified objective standard for determining when a latent print is adequate to allow comparison, the district court concluded that fingerprint analysis is sufficiently reliable to satisfy the Daubert/Kumho standard and denied Havvard's motion.

At trial the government called Officer Michael Knapp, a fingerprint expert employed by the Indianapolis Police Department. After relating his extensive knowledge, training, and experience with fingerprint identifications, Officer Knapp described the general scientific basis for fingerprint analysis and the particular comparison techniques he uses to match fingerprints. He then stated that a latent print found on the .45 caliber pistol recovered at the time of Havvard's arrest matched an exemplar print of Havvard's left index finger. Havvard cross-examined Officer Knapp but did not offer a fingerprint expert of his own. The jury ultimately found Havvard guilty of one count of possession of a firearm by a felon.

In this court Havvard first argues that the district court did not properly conduct its Daubert hearing to determine the admissibility of fingerprint evidence under Rule 702, a determination that we review de novo. See United States v. Cruz-Velasco, 224 F.3d 654, 659 (7th Cir. 2000). Specifically, he contends that fingerprint evidence is inadmissible under Daubert because it is not "scientifically" based. The standards of Daubert, however, are not limited in application to "scientific" testimony alone. See Kumho, 526 U.S. at 147 (holding that "the basic gatekeeping obligation" of Daubert applies to all expert testimony). Therefore, the idea that fingerprint comparison is not sufficiently "scientific" cannot be the basis for exclusion under Daubert. Nor do we accept Havvard's argument that Daubert completely supplanted the general acceptance test of Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), because the Supreme Court in Kuhmo still identified

"general acceptance" as a relevant consideration, see Kuhmo, 526 U.S. at 150. Instead, the Daubert standard offers a list of flexible factors to be used as appropriate for various types of expert testimony in determining the reliability of the proffered testimony. See Nutrasweet Co. v. X-L Eng'g Co., 227 F.3d 776, 788 (7th Cir. 2000).

The issue of the reliability of fingerprint evidence after Daubert appears to be one of first impression in this circuit, and few other courts have addressed this question. Those discussing the issue have not excluded fingerprint evidence; instead, they have declined to conduct a pretrial Daubert hearing on the admissibility of fingerprint evidence, see United States v. Martinez-Cintron, 136 F. Supp. 2d 17 (D.P.R. 2001) (relying on the district court's order in this case); United States v. Cooper, 91 F. Supp. 2d 79, 82-83 (D.D.C. 2000), or have issued brief opinions asserting that the reliability of fingerprint comparisons cannot be questioned, see United States v. Sherwood, 98 F.3d 402, 408 (9th Cir. 1996); United States v. Joseph, 2001 WL 515213 (E.D. La. May 14, 2001).

For his part Havvard argues that fingerprint comparisons are not reliable because the government admits that the basic premise that all fingerprints are unique remains unproven, and because there are no objective standards for defining how much of a latent fingerprint is necessary to conduct a comparison or for evaluating an individual examiner's comparison. Havvard relies heavily on a National Institute of Justice solicitation, issued in March 2000, which sought proposals for fingerprint research studies to be performed and published under its guidance. The National Institute of Justice's stated goal was "to provide greater scientific foundation for forensic friction ridge (fingerprint) identification," which Havvard characterizes as an "admission" by the government that more research needs to be done in the area of fingerprint analysis./1 This document, however, was not part of the record in the district court and cannot now be relied upon here. See McClendon v. Ind. Sugars, Inc., 108 F.3d 789, 795 (7th Cir. 1997). The same is true for a 1995 report of the Collaborative Testing Service, which Havvard cites to suggest a higher error

rate for fingerprint comparisons than was testified to by Meager. Like the National Institute for Justice solicitation, the Collaborative Testing Services's study was available prior to the Daubert hearing and could have been made part of the district court record or been used as a basis to cross-examine Meager.

Havvard also relies on three district court cases as support for his contention that fingerprint analysis is not scientific and is thus unreliable. These cases reject under Daubert expert analysis of handwriting and hair fibers, and Havvard relies on these three decisions to suggest that fingerprint analysis is similarly inadmissible. But in each decision, the district court contrasts the rejected technique with latent print identification and specifically credits the greater reliability of fingerprint evidence. See United States v. Santillan, No. CR-96-40169, 1999 WL 1201765, at *5 (N.D. Cal. Dec. 3, 1999) ("It is apparent to the Court that handwriting opinion testimony on unique identification does not have the validity and reliability of fingerprints or DNA evidence."); United States v. Starzecpyzel, 880 F. Supp. 1027, 1046 (S.D.N.Y. 1995) ("By way of comparison [to handwriting analysis,] objective standards are employed in fingerprint analysis."); Williamson v. Reynolds, 904 F. Supp. 1529, 1554 (E.D. Okla. 1995) (government's expert "admitted that hair comparisons are not absolute identifications like fingerprints"), rev'd on other grounds, 110 F.3d 1508 (10th Cir. 1997). Thus, we are at a loss to understand Havvard's reliance on these decisions.

Havvard further contends that the district court improperly required him to disprove the validity of fingerprint evidence at the Daubert hearing, rather than requiring the government to identify a scientific basis for fingerprint analysis. We think Havvard reads too much into the district court's observation that he had "offered no evidence in this case undermining the reliability of the methods in general." See Havvard, 117 F. Supp. 2d at 854. The district court recognized that establishing the reliability of fingerprint analysis was made easier by its 100 years of successful use in criminal trials, and

appropriately noted that nothing presented at the hearing undermined Meager's testimony. Most importantly, it is clear from the district court's thorough order that it properly considered the Daubert factors in analyzing Havvard's motion and concluded that fingerprinting techniques have been tested in the adversarial system, that individual results are routinely subjected to peer review for verification, and that the probability for error is exceptionally low. See Kumho, 526 U.S. at 150.

Finally, Havvard argues that the district court erred in allowing Officer Knapp to testify because his testimony "was presented as an ipse dixit, the government asked the jury to find that the fingerprint was Mr. Havvard's simply because it was Patrolman Knapp's opinion that it was his fingerprint." Havvard is incorrect, however, in suggesting that the district court could not admit Officer Knapp's conclusion without more elaboration, see Fed. R. Evid. 705; Mid-State Fertilizer Co. v. Exch. Nat'l Bank, 877 F.2d 1333, 1339 (7th Cir. 1989) ("Rule 705 . . . allows experts to present naked opinions."); see also United States v. Lawson, 653 F.2d 299, 302 (7th Cir. 1981); uncovering the basis for that opinion was a matter for cross-examination, see Fed. R. Evid. 705; see also Symbol Techs., Inc. v. Opticon, Inc., 935 F.2d 1569, 1575 (Fed. Cir. 1991) (collecting cases).

Because we find no error, the judgment of the district court is AFFIRMED.

FOOTNOTE

/1 At oral argument, the government stated that this solicitation was withdrawn, but the National Institute of Justice's website, at http://www.ojp.usdoj.gov/nij/ (last visited June 26, 2001), does not indicate that funding for this program has been discontinued.