**UNITED STATES of America,**
**Plaintiff,**

v.

**Timothy Jay CLINE, a/k/a "Pony," and**
**Charles Williams Hopkins,**
**Defendants.**

**No. 00–40024–03/06–SAC.**

United States District Court,
D. Kansas.

Feb. 21, 2002.

Anthony W. Mattivi, Office of United States Attorney, Topeka, KS, for Plaintiff.

Janet Marie Cline, Quapaw, OK, for Defendants.

### MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the following motions in limine: Charles William Hopkins' motion to exclude evidence of prior crimes (Dk.1215); Hopkins' motion to bar the government from vouching (Dk.1218); Timothy Cline's motion to exclude expert opinion testimony on fingerprint identification (Dk.1222); Cline's motion to exclude evidence that Assistant United States Attorney Anthony Mattivi participated in the execution of the search warrant on Cline's residence and in the interview of Cline following his arrest (Dk.1224); Cline's motion to exclude irrelevant and prejudicial evidence (Dk.1226); Cline's motion to exclude expert testimony regarding the interpretation of the English language (Dk.1228); Cline's motion to prohibit the presentation of testimony by "overview witness" (Dk.1230); the government's motion to allow two case agents to be excused from sequestration under Fed. R.Evid. 615 (Dk.1245); Cline's motion to prohibit the government's use of its presentation software to publish the wiretap and undercover recordings at trial (Dk.1256); Cline's motion to prohibit the government from offering or displaying the firearms seized from Cline's residence on March 27, 2000, (Dk.1258); Cline's motion to prohibit mention or evidence of non-testifying co-defendants' guilty pleas (Dk.1260); and the government's motion to dismiss various charges and to sequentially renumber the remaining counts and proposed summary of indictment (Dk.1265).

### MOTION IN LIMINE STANDARDS

 A creature of neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence, the motion in limine gives a court the chance " 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.' " *Palmieri v. Defaria*, 88 F.3d 136, 141 (2nd Cir.1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F.Supp. 1400, 1401 (D.Md.1987)); *see also Deghand v. Wal–Mart Stores, Inc.*, 980 F.Supp. 1176, 1179 (D.Kan.1997). Though such rulings can work a savings in time, cost, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence. The better practice is to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there. *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303 (1975); *Hunter v. Blair*, 120 F.R.D. 667 (S.D.Ohio 1987). Indeed, a court should refrain from the undue speculation inherent in making evidentiary rulings before hearing the factual context at trial.

 A trial court may alter its limine ruling based on developments at trial or on its own sound judicial discretion. *Luce v. United States*, 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Some in limine rulings, like those involving Rule 609(a)(1), "are necessarily preliminary because the required balancing may be reassessed as the evidence actually comes in." *United States v. Martinez*, 76 F.3d 1145, 1152 (10th Cir.1996) (citing *United States v. Mejia–Alarcon*, 995 F.2d 982, 987 n. 2 (10th Cir.), *cert. denied*, 510 U.S. 927, 114

S.Ct. 334, 126 L.Ed.2d 279 (1993)). For that matter, "[t]he admissibility of Rule 404(b) evidence will generally be a fact-bound determination, depending to a significant degree on the character of the other evidence admitted at trial, all of which requires a balancing of probative value versus unfair prejudice at trial." *United States v. Lawless*, 153 F.3d 729, 1998 WL 438662, at *4 (10th Cir. July 15, 1998) (citations omitted), *cert. denied*, 525 U.S. 1027, 119 S.Ct. 561, 142 L.Ed.2d 467 (Nov. 30, 1998). "A district court 'may change its ruling at any time for whatever reason it deems appropriate.'" *United States v. Martinez*, 76 F.3d at 1152 (quoting *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir.1995)). Consequently, in limine motions and rulings will not necessarily preserve objections for appeal:

> A motion in limine will not preserve an objection if it is not renewed at the time the evidence is introduced unless "the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation by the trial judge.... [M]ost objections will prove to be dependent on trial context and will be determined to be waived if not renewed at trial."

*United States v. McVeigh*, 153 F.3d 1166, 1200 (10th Cir.1998) (quoting *United States v. Mejia–Alarcon*, 995 F.2d at 986–88), *cert. denied*, 526 U.S. 1007, 119 S.Ct. 1148, 143 L.Ed.2d 215 (1999).

 As a procedural matter, the movant should identify the particular evidence at issue and articulate with specificity the arguments supporting the position that the particular evidence is inadmissible on any relevant ground. A court is well within its discretion to deny a motion in limine that fails to identify the evidence with particularity or to present arguments with specificity. *National Union v. L.E. Myers Co.* *Group*, 937 F.Supp. 276, 287 (S.D.N.Y. 1996).

## HOPKINS' MOTION TO EXCLUDE EVIDENCE OF PRIOR CRIMES (Dk.1215)

 Arguing Rules 403 and 404 of the Federal Rules of Evidence, Hopkins seeks to bar the government from referring to or introducing evidence of his prior conviction for "domestic/kidnapping—unlawful restraint" and of his prior drug use. Hopkins states his intention to introduce character evidence. The government opposes the motion saying it is premature as this evidence may be admissible on several grounds depending on what occurs during trial. The government gives several examples in support of its position. The government further argues that the defendant's prior drug use is plainly relevant to the drug conspiracy charge and admissible under Rule 404(b) as evidence of the defendant's plan, motive, and intent.

Concerning the defendant's prior conviction, the court denies the motion as premature but directs the government not to reference or mention, directly or indirectly, before the jury panel or jury or introduce any evidence with respect to this conviction without first approaching the bench and having the issue of its use or admissibility decided by the court. As for evidence of the defendant's prior drug use, the court denies the motion on its merits and for its failure to identify with particularity the evidence at issue.

## HOPKINS' MOTION TO BAR THE GOVERNMENT FROM VOUCHING (Dk.1218)

 Hopkins asks for an order barring the government from bringing out the fact and/or emphasizing that a grand jury returned an indictment against him. The government opposes the motion as too broad in rejecting the proper use of an

indictment at trial and as too vague in not specifying what the defendant believes to be improper vouching by the government. The government further represents it will not offer any evidence or argument about the indictment that is contrary to court's standard instruction that an indictment is a mere charge and is not evidence.

Because the government does not intend to make any use of the indictment that is contrary to the jury instructions,[1] the court denies the motion as moot. As far as any other possible vouching conduct by the government, the defendant's arguments are too vague and speculative for the court to decide.

## CLINE'S MOTION TO EXCLUDE EXPERT TESTIMONY ON FINGERPRINT IDENTIFICATION (Dk.1222)

The defendant Cline seeks an order prohibiting the government from introducing expert testimony or expert reports that the latent print obtained from government's exhibit N–46 matches one of Timothy Cline's rolled fingerprints from a fingerprint card. Citing the recent decision of *United States v. Llera Plaza*, 179 F.Supp.2d 492 (E.D.Pa.2002), the defendant argues such expert testimony fails the standards articulated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), and recently amended Fed.R.Evid. 702, in that fingerprint identification analysis has not been tested scientifically, it has not been subjected to peer review and publication, it has a practitioner error rate that is unknown, it is a subjective determination without any minimum point standards for identification, and there are no uniform qualification standards for finger-

print examiners. The government counters that the *Llera Plaza* decision represents a minority viewpoint with all other courts finding fingerprint identification testimony to be reliable and admissible.

■ The issue is one of reliability. The gatekeeping function established in *Daubert* is "to ensure the reliability and relevancy of expert testimony" and "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Some of the factors relevant to this determination identified in *Daubert* and *Kumho* include: (1) whether the theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether it has a high known or potential rate of error; (4) whether its operation is subject to controlling standards; and (5) whether it enjoys general acceptance within a relevant scientific or expert community. 526 U.S. at 149–50, 119 S.Ct. 1167. Because "there are many kinds of experts and many different kinds of expertise," these factors are not exhaustive, exclusive or definitive. 526 U.S. at 150–51, 119 S.Ct. 1167. These factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." 526 U.S. at 150, 119 S.Ct. 1167.

Research shows *Llera Plaza* stands alone in rejecting fingerprint identification opinions on the standards established in *Daubert, Kumho,* and Fed.R.Evid. 702.

---

1. The court intends to instruct the jury as follows: "An indictment is only a method of accusing a defendant of a crime. It is not evidence of any kind against a defendant and does not create any presumption or permit any inference of guilt. It is a mere charge or accusation—nothing more and nothing less."

The district court itself recognized that other courts addressing this issue have upheld admissibility even after the *Daubert* decision and the more recent amendment of Fed.R.Evid. 702. *Llera Plaza*, 179 F.Supp.2d at 500–501. While certainly exhaustive and informed, the analysis of the *Daubert* factors used in *Llera Plaza* does not persuade this court to depart from the well-traveled path. The decision should be applauded to the extent that it encourages empirical testing of the process within more traditional "scientific" parameters, leads to additional submissions to the relevant body of peer review literature, and possibly fosters the development of uniform standards followed and accepted by all qualified fingerprint examiners. It is the humble opinion of this court, however, that the decision in *Llera Plaza* overreaches in concluding that the current fingerprint identification analysis so utterly fails the so-called "scientific" criteria in *Daubert* as to render all fingerprint examiners' "subjective" evaluations or identifications unreliable and inadmissible under Rule 702. This court remains satisfied that general fingerprint identification analysis clears the threshold of reliability under Rule 702 after considering all relevant factors, including those from *Daubert*, and that the shortcomings argued against this analysis are more prudently treated as matters going to the weight of the evidence.[2]

■ Rather than repeating or attempting to restate what other courts have said in their evaluation of the *Daubert* factors for fingerprint identification, the court simply adopts what has been said in the following decisions. *United States v. Havvard*, 117 F.Supp.2d 848, 853–855 (S.D.Ind. 2000), *aff'd*, 260 F.3d 597, 599–601 (7th Cir.2001); *see United States v. Rogers*, 26 Fed.Appx. 171, 2001 WL 1635494, at *1–*2 (4th Cir. Dec. 20, 2001) (Table); *United States v. Reaux*, 2001 WL 883221, at *1–*2 (E.D.La. Jul.31, 2001); *United States v. Joseph*, 2001 WL 515213 (E.D.La. May 14, 2001); *United States v. Martinez–Cintron*, 136 F.Supp.2d 17, 18–20 (D.Puerto Rico 2001). In these same decisions, the courts also recognized that evidentiary *Daubert* hearings were unnecessary as the reliability of the methods could be properly taken for granted. *See, e.g., United States v. Reaux*, 2001 WL at *1–2; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir.1996). The court likewise holds that a *Daubert* hearing is unnecessary as the defendant is lodging only a general attack on fingerprint identification testimony and methodology.

■ Before leaving this subject, the court feels compelled to make a couple of observations on this emerging issue. Used successfully in criminal trials for over 100 years, fingerprint identification analysis has withstood the scrutiny and testing of the adversarial process. *United States v. Havvard*, 260 F.3d at 601.[3] Those of a "scientific" bent certainly can take issue with whether the judges and lawyers have the education or training to engage in "scientific" testing and with whether the courtrooms provide the sterile, laboratory-like and objective atmosphere associated with and probably conducive to scientific analysis. Even so, it seems an unreasonable stretch simply to discard this experiential testing as wholly

---

2. Of course, the court's conclusions speak only to the subject in general and do not address the reliability or relevance of the expert opinions to be offered here. Neither side has devoted any of its discussion to the particular fingerprint identification opinions in this case.

3. The Tenth Circuit, in contrasting hair analysis, grouped fingerprint identification with DNA analysis as being "conclusive." *Williamson v. Ward*, 110 F.3d 1508, 1520 n. 13 (10th Cir.1997).

unreliable and to relegate the testifying opinions of all these fingerprint examiners to *ipse dixit*.[4] Moreover, this court joins others who do not read *Daubert* and *Kumho* as elevating the scientific method to the touchstone by which all Rule 702 evidence is to be judged. *See, e.g., United States v. Havvard*, 260 F.3d at 600 ("[T]he idea that fingerprint comparison is not sufficiently 'scientific' cannot be the basis for exclusion under *Daubert*."). The Supreme Court itself eschewed such a reading when it dismissed the argument that the trial court's gatekeeping obligation depended on whether the expert knowledge to be offered was scientific, technical or other:

> Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called "general truths derived from ... specialized experience." (citation omitted). And whether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest "upon an experience confessedly foreign in kind to [the jury's] own." (citation omitted). The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge.

\* \* \* \* \* \*

Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. (citation omitted). In other cases, the relevant reliability concerns may focus upon personal knowledge or experience. As the Solicitor General points out, there are many different kinds of experts, and many different kinds of expertise. See Brief for United States as *Amicus Curiae* 18–19, and n. 5 (citing cases involving experts in drug terms, handwriting analysis, criminal *modus operandi*, land valuation, agricultural practices, railroad procedures, attorney's fee valuation, and others). Our emphasis on the word "may" thus reflects *Daubert's* description of the Rule 702 inquiry as "a flexible one." 509 U.S. at 594, 113 S.Ct. 2786.

526 U.S. at 148–50, 119 S.Ct. 1167. (citation omitted). Indeed, the trial court's "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786.[5] The court's reading of the case law and literature on this issue leads it to believe that the real rub is with the conclusiveness in which fingerprint examiners express their opinions and with which the opinions may have been generally received by the courts and juries. Such a dispute, however, does not justify being "overly pessimistic about the capabilities of the jury and of the adversary system generally. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

---

**4.** General acceptance remains a relevant consideration under *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). *United States v. Havvard*, 260 F.3d 597, 600 (7th Cir.2001).

**5.** In saying the "focus" should be on theory and methodology, not conclusions, the Court necessarily recognizes that it is for the jury to decide the relevance and reliability of a particular application of the theory and methodology found reliable by the trial court. Thus, when a trial court finds the theory reliable that fingerprints are unique and permanent and ascertains that there is an established and accepted methodology for matching fingerprints, its gatekeeping role has been served and now the jury must determine whether the expert witness has properly applied this theory and methodology to the case.

traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786. The court overrules the defendant's motion in limine.

**CLINE'S MOTION TO EXCLUDE EVIDENCE THAT ASSISTANT UNITED STATES ATTORNEY ANTHONY MATTIVI PARTICIPATED IN THE EXECUTION OF THE SEARCH WARRANT ON CLINE'S RESIDENCE AND IN THE INTERVIEW OF CLINE FOLLOWING HIS ARREST (Dk.1224)**

■ The defendant Cline does not seek the disqualification of Assistant United States Attorney ("AUSA") Mattivi but does want to keep out any evidence that AUSA Mattivi personally participated in these events, to redact any such reference to him in the documents to be offered at trial, and to instruct the government's witnesses not to mention Mattivi's presence at these events. The government responds that AUSA Mattivi participated in the interview of Cline but did not participate in the execution of the search warrant at Cline's residence. The government represents that it will not mention Mattivi's presence at the interview and has no documents to be introduced at trial which mention Mattivi's presence at either event. Other than directing the government to instruct its witnesses to not mention AUSA Mattivi's presence or participation in these events, the court denies the defendant's motion as moot in light of the government's representation.

**CLINE'S MOTION TO EXCLUDE IRRELEVANT AND PREJUDICIAL EVIDENCE (Dk.1226)**

The defendant Cline seeks an order prohibiting the prosecution from referring to, mentioning, suggesting, introducing evidence or attempting to introduce into evidence, or stating before the jury for any purpose the following eleven paragraphs of possible matters. Considering the government's response [6] and the parties' different arguments, the court rules as follows.

■ 1. Any and all evidence related to the 1994 IRS/DEA search warrants at Romantic Delights and the Cline residence. This request is denied as moot, because the government does not intend to offer any such evidence in its case in chief. Nor shall the government otherwise refer to or mention this evidence before the jury without first approaching the bench.

■ 2. Any and all evidence related to the seizure in May 1995 of $12,050 cash from Mr. Cline and $10,130 from Rob Crance at the Ontario, California, airport. This request is denied as moot, because the government does not intend to offer any such evidence in its case in chief. Nor shall the government otherwise refer to or mention this evidence before the jury without first approaching the bench.

■ 3. Any and all evidence related to David Milton Hammons' claim that he sold 100 pounds of methamphetamine to Mr. Cline through Harlan Sartin during 1996. This request is denied as moot, because the government does not intend to offer any such evidence in its case in chief. Nor shall the government otherwise refer to or mention this evidence before the jury without first approaching the bench.

■ 4. Any alleged connection between the Hell's Angels and Biker's Dream mentioned by Hammons—that anyone who owned a Biker's Dream franchise would have to be affiliated in some way with the Hell's Angels. This request is

---

**6.** As to five of the paragraphs, the government states it has no intention of introducing such evidence but reserves its right to introduce

the same should the defendant make the evidence relevant.

denied as moot, because the government does not intend to offer any such evidence in its case in chief. Nor shall the government otherwise refer to or mention this evidence before the jury without first approaching the bench.

■■■■ 5. Any and all evidence regarding Anthony Fracasso's and/or Kent Groves' prior alleged drug transactions with Mr. Cline. Besides the typical concerns addressed by Rules 403 and 404(b), the defendant argues these uncharged acts carry the additional prejudice of confusing, delay-causing mini-trials. . The government represents that both Mr. Fracasso and Mr. Groves will be witnesses testifying to the defendant's involvement in the manufacture and distribution of methamphetamine and to the defendant's use of Johnny Shane Wright as the "cook" replacing Mr. Fracasso. The government intends to offer this evidence pursuant to Rule 404(b) to show the defendant's plan, motive, intent and absence of mistake. The court overrules the defendant's in limine request, as the government's response gives the court sufficient reason to believe that this evidence (1) will be offered for a proper Rule 404(b) purposes,[7] (2) will be relevant under Rule 401,[8] and (3) will have probative value that is not substantially outweighed by its potential for unfair prejudice[9] under Rule 403. The court will hear the defendant as to the timing and substance of an appropriate limiting instruction.

■■■■ 6. Any and all evidence surrounding law enforcement's seizure of approximately $34,000 in cash from a motorcycle registered to John Keaney which was being transported in the back of a pickup truck driven by Rudolp Maio. The defendant argues that the evidence of the odor of marijuana and/or marijuana residue near the cash is completely irrelevant to the charged methamphetamine conspiracy. The government points out the conspiracy in count one charges the distribution of "controlled substances," not just methamphetamine. The government argues that it will be able to tie directly this seizure of $34,000 to the charged conspiracy. Based on what the court has learned about this seizure during the suppression hearing and on what the government presently contends, the court has reason to believe the government will be able to show the relevance of this evidence. This request is overruled.

7. Any reference to this case or the underlying investigation as "Operation Renegade." The defendant comes forth with no sound objection to the government referring to its criminal investigation by its

---

**7.** The Tenth Circuit "has repeatedly held that the use of prior drug involvement to show plan, motive or intent in a drug trafficking offense is appropriate." *United States v. Ramirez,* 63 F.3d 937, 943 (10th Cir.1995) (citations omitted).

**8.** Evidence of prior drug involvement is relevant when it relates to a matter that is at issue in the case. *United States v. Hardwell,* 80 F.3d 1471, 1489 (10th Cir.1996). The relevance of prior narcotics involvement is evaluated by whether it is close in time and similar to the charged crime. *United States v. Conway,* 73 F.3d 975, 981 (10th Cir.1995). Under the relevance prong, the court also must decide whether from the evidence "the jury

could reasonably find"—that the defendant committed or participated in the prior narcotics violations—"by a preponderance of the evidence." *See Huddleston v. United States,* 485 U.S. 681, 690–91, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

**9.** Evidence of prior bad acts that went uncharged can be "highly probative in showing motive, intent, knowledge or plan in the context of a conspiracy prosecution." *United States v. Edwards,* 69 F.3d 419, 436 (10th Cir.1995) (quotation omitted). "This is particularly true where the uncharged acts are similar in method to the charged conspiracy and sufficiently close in time." *Id.*

given name. The court overrules this request.

■■ 8. Any and all evidence regarding Tim and Janet Cline's pending divorce, Mr. Cline's present girlfriend, the fire at the Cline residence, and the financial difficulties of Mr. Cline's business. This request is denied as moot, because the government does not intend to offer any such evidence in its case in chief. Nor shall the government otherwise refer to or mention this evidence before the jury panel or jury without first approaching the bench.

9. Any and all evidence regarding the death of Bobby Gaskill, who died of an asthma-induced heart attack and/or overdose after consuming methamphetamine allegedly provided by co-defendant Michael Hopkins. The defendant argues this evidence is not relevant as neither he nor any of the defendants remaining for trial are alleged to have been involved in this death. The defendant also contends the evidence is unfairly prejudicial in that it would frighten the jury. Though believing there is credible evidence linking Gaskill's death to the methamphetamine manufactured and distributed by the conspiracy charged in count one, the government does not know whether it will offer this evidence in its case in chief. The court takes this request under advisement. The government shall approach the bench before it or any of its witnesses directly or indirectly make any mention of or reference to Gaskill's death in front of the jury panel or jury or before it offers any evidence of the same.

■■ 10. Any and all "outlaw motorcycle gang" evidence, including, but not limited to, any reference to the Loners being an "outlaw motorcycle gang" and that Mr. Cline is a member of the Loners. The defendant complains this evidence is an effort to prove guilt by association. With the possible exception of co-defendant John Cervine, the defendant argues there

is no evidence that any of the other co-conspirators are members of the Loners or that any sales of controlled substances were made to Loners members. The defendant also insists that the government is unable to tie Cervine's possession of drugs to his membership or the defendant's membership in the Loners. The government responds that it will offer evidence of the Loners Motorcycle Gang to prove and explain relationships between co-conspirators and witnesses. Denying that this evidence will be offered to prove criminal "propensity," the government maintains the gang membership will be "direct evidence of the formation, purpose, and activities of the conspiracy, as well as the defendant's and his co-conspirators' knowledge." (Dk. 1246, at p. 8). The government represents that it will not refer to the Loners Motorcycle Gang as an "outlaw" gang. The court overrules the motion, as the government offers proper purposes for introducing evidence of the membership of the defendant, co-conspirators and witnesses in the Loners Motorcycle Gang. The court would entertain giving a limiting instruction on the jury's use and consideration of this evidence in the event that the defendant would propose one.

[28] 11. Any and all racially inappropriate comments contained in the wiretap tapes. The defendant points to an ambiguous reference to "white boy" made by Janet Cline in a wiretap tape, as a comment that may be offensive to African Americans on the jury. The government denies that this statement on its face qualifies as a racially inappropriate comment. The court overrules this objection, as the cited comment is ambiguous and does not appear to be so racially offensive as to have the potential for creating unfair prejudice against the defendant.

## CLINE'S MOTION TO EXCLUDE EXPERT TESTIMONY REGARDING THE INTERPRETATION OF THE ENGLISH LANGUAGE (Dk.1228)

 Noting the contents of search warrant affidavits given by the Drug Enforcement Administration ("DEA") special agents in this case, the defendant seeks to preclude the government from presenting expert witness testimony regarding the meaning of certain words used in telephone conversations intercepted by wiretaps. The defendant argues this evidence fails the *Daubert* standards and alternatively requests a *Daubert* hearing concerning the reliability and relevance of any such testimony. The government responds that it does not intend to offer such expert testimony in this case and that it will rely on testifying co-conspirators to explain the meaning of certain words. There being no expert witnesses or *Daubert* issues on the meaning of certain words used in wiretapped telephone conversations, the court denies the motion as moot.

## CLINE'S MOTION TO PROHIBIT THE PRESENTATION OF TESTIMONY BY "OVERVIEW WITNESS" (Dk.1230)

The defendant moves the court for an order prohibiting the government from presenting the testimony of an "overview witness" at the beginning of the government's case in chief. The defendant characterizes this situation as the government calling a "summary witness" who will testify before there is any evidence admitted to summarize and who will give essentially a second opening statement of the government's anticipated evidence. The government refutes this characterization saying the "overview witnesses" will be fact witnesses "who will establish, among other things, the conspiracy and the defendants' roles in that conspiracy for purposes of introducing co-conspirator statements under Fed.R.Evid. 801(d)(2)(E)." (Dk.1243).

The court overrules the defendant's motion as speculative, premature, and vague. The defendant's objections to this testimony are best presented and decided during trial.

## GOVERNMENT'S MOTION TO ALLOW TWO CASE AGENTS TO BE EXCUSED FROM SEQUESTRATION UNDER FED. R. EVID. 615 (Dk.1245)

The government requests an order allowing it to have both DEA Special Agent Robert Ryan and KBI Special Agent James Timothy Botts be present together or individually at the government's table during trial. In its prior order, the court granted the government's request to have two case agents present during trial and assumed the agents would be Special Agent Ryan and Special Agent John Aldine. (Dk.1238, p. 12). With the government's clarification of the agents wanted at its table, Ryan and Botts, the court grants the government's motion.

## CLINE'S MOTION TO PROHIBIT THE GOVERNMENT'S USE OF ITS PRESENTATION SOFTWARE TO PUBLISH THE WIRETAP AND UNDERCOVER RECORDINGS AT TRIAL (Dk.1256)

 The defendant seeks to bar the government from using its presentation software in publishing the wiretap and undercover recordings to the jury. The defendant questions the adequacy of a record on appeal should this equipment be used. The defendant complains that the presentation would require the jury to focus on the same location to receive the sound and to see the transcript. The defendant objects that the presentation displays photographs of the purported speakers and alternatively highlights the supposed speaker's photograph. The defendant objects to the excessive time it would take for his counsel to verify the accuracy of the government's photograph-

ic designation of the different speakers for the entire duration of the approximately fifty tapes to be presented by the government. Finally, the defendant objects to the obvious mug shot the government is using for his photograph.

The government counters that the software program is not part of the evidence but only a demonstrative aid and that the tapes are the evidence and their substance are not altered by the software program. The government points out that the sound and transcripts do not have the same source, as the sound comes from the courtroom's sound system and the transcripts are displayed on the individual monitors in the jury box. Just like paper copies of the transcript, jurors will have the choice of only listening to the recording or also following along with the transcript. As far as the accuracy of the photographic displays, the government insists it is no different from the written transcripts to which the defendant has had access for some time. The government concedes the picture of Cline being used is a mug shot and offers the defendant the chance to submit another picture or to have the government take a different photograph of him.

In light of the government's response to the different objections, the court denies the defendant's motion. There appears to be no issue as to the record on appeal, as the government intends to offer the tapes into evidence. Should there be some need to include all or a part of the transcripts in the record, the government appears ready to provide a paper copy of the same. The photographic display of the purported speakers is not any more prejudicial to the defendant than the names of the speakers appearing on the written transcript. Finally, the court will permit the defendant to submit an alternative photograph of himself or make himself available for the government to take another photograph.

If the defendant does not cooperate in this regards, the government will be permitted to use the defendant's mug shot. If the parties cannot agree on an alternative photograph, they should alert the court promptly.

**CLINE'S MOTION TO PROHIBIT THE GOVERNMENT FROM OFFERING OR DISPLAYING THE FIREARMS SEIZED FROM CLINE'S RESIDENCE ON MARCH 27, 2000, (DK.1258)**

The defendant argues that sixteen firearms allegedly seized from his residence during the execution of a search warrant on his home do not form the basis for any charges in this case. The defendant insists that the firearms are not relevant to the charged counts and, alternatively, that the danger of unfair prejudice to him substantially outweighs any minimal probative value which the firearms may arguable have to this case. The defendant believes the government wants to introduce this firearm evidence in an effort to paint him as a "dangerous" man and to frighten the jury into convicting him on this improper basis.

The government discourages the court from making a pretrial ruling as the relevance of this evidence will depend largely on the factual context coming out at trial. The government asks the court to defer its ruling until trial and to consider the following arguments at that time. Firearms are tools of the trade for those engaged in drug trafficking activities. The evidence of firearms will be used to show the defendant's involvement in the charged conspiracy, the defendant's use of typical tools of the drug trade, and a location for the conspiracy's operations. The firearms also will bolster the other evidence found on the Oklahoma property that connects it to the drug conspiracy.

The court denies the motion in limine and defers ruling on the admissibility of

this firearm evidence until it is offered at trial. A Rule 403 objection to firearm evidence introduced in a drug trafficking case is not new to this circuit:

> In the context of drug distribution offenses, firearms are viewed as " 'tools of the trade'—that is, means for the distribution of illegal drugs." *United States v. Martinez,* 938 F.2d 1078, 1083 (10th Cir.1991). As such, they are probative of a defendant's participation in the drug distribution business and in the particular charged distribution offenses, and it is immaterial that Mr. Bailey was not being tried for any offense directly related to his possession of firearms. *See id.* Indeed, several witnesses testified that Mr. Bailey carried a firearm during drug transactions. Finally, while the evidence was unfavorable, it was by no means so unfairly prejudicial as to "be misleading and not aid and assist the jury in making a material determination of the case." [*United States v.*] *Flanagan,* 34 F.3d [949], 953 [ (10th Cir.1994) ] (quotation omitted).

*United States v. Baker,* 166 F.3d 348, 1998 WL 808392, at *5 (10th Cir. Nov. 20, 1998); *United States v. Burnett,* 141 F.3d 1186, 1998 WL 104718, at *3–*4 (10th Cir.1998) ("evidence of firearms is sufficiently probative to warrant admission under Rule 403 to show that a defendant is involved in drug distribution." That a defendant is charged "only with drug possession and conspiracy charges does not render firearm evidence irrelevant or inadmissible." (citations omitted)); *United States v. Mendoza–Salgado,* 964 F.2d 993, 1007 (10th Cir.1992) ("Admitting evidence of drugs or weapons to support the government's theory of a drug conspiracy is generally not improper." (citations omitted)); *United States v. Martinez,* 938 F.2d 1078, 1084 (10th Cir.1991) ("Violence is not an uncommon feature of the drug trade and weapons are often viewed as necessary tools to facilitate it."). Guided by these decisions,

the court will balance the Rule 403 concerns at trial upon hearing the factual context for this firearm evidence being offered, *e.g.,* the number, location and nature of the firearms being offered, the proximity of the guns to any of the seized controlled substances or large sums of cash, the amount of controlled substances seized from the residence, and the evidence showing the nature, scope and mode of operation for the charged conspiracy and how the residence was used to facilitate the drug conspiracy. The court denies the defendant's request for an in limine ruling on the admissibility of the firearms.

**CLINE'S MOTION TO PROHIBIT MENTION OR EVIDENCE OF NON–TESTIFYING CO–DEFENDANTS' GUILTY PLEAS (Dk.1260)**

▇▇ The court denies this motion as moot based on the government's representation that it does not intend to offer evidence of non-testifying co-defendants' guilty pleas. The court further directs the government not to reference or otherwise mention these guilty pleas for any purpose in the presence of the jury panel or jury.

**GOVERNMENT'S MOTION TO DISMISS VARIOUS CHARGES AND TO SEQUENTIALLY RENUMBER THE REMAINING COUNTS AND PROPOSED SUMMARY OF INDICTMENT (Dk.1265)**

The defendants have filed no objections to the dismissal of various charges and to the renumbering of the remaining counts. The court grants the motion as uncontested and as in the best interest of the parties, the court and the public.

The defendant Cline objects to the government's summary of the indictment for its repeated use of "illegal" and for its erroneous description of count six as charging "distribution" rather than "pos-

session." Using "illegal" in lieu of saying "in violation of" a specific statute is appropriate, if not necessary. The number of times that "illegal" appears in the summary is not prejudicial to the defendant. The court overrules the defendant's objection to the repeated use of "illegal" but sustains the defendant's objection to the summary of count six and changes "distributed" to "possessed."

IT IS THEREFORE ORDERED that Charles William Hopkins' motion to exclude evidence of prior crimes (Dk.1215) is denied as to evidence of the defendant's prior drug use and is denied as to evidence of the defendant's prior conviction but the government shall not reference or mention, directly or indirectly, before the jury panel or jury or introduce any evidence with respect to this conviction without first approaching the bench;

IT IS FURTHER ORDERED that Hopkins' motion to bar the government from vouching (Dk.1218) is denied as moot and speculative;

IT IS FURTHER ORDERED that Timothy Cline's motion to exclude expert opinion testimony on fingerprint identification (Dk.1222) is denied;

IT IS FURTHER ORDERED that Timothy Cline's motion to exclude evidence that Assistant United States Attorney Anthony Mattivi participated in the execution of the search warrant on Cline's residence and in the interview of Cline following his arrest (Dk.1224) is denied as moot;

IT IS FURTHER ORDERED that Timothy Cline's motion to exclude irrelevant and prejudicial evidence (Dk.1226) is denied as moot as to 1, 2, 3, 4 and 8; is denied as to 5, 6, 7, 10 and 11; and is taken under advisement as to 9;

IT IS FURTHER ORDERED that Timothy Cline's motion to exclude expert testimony regarding the interpretation of the English language (Dk.1228) is denied as moot;

IT IS FURTHER ORDERED that Timothy Cline's motion to prohibit the presentation of testimony by "overview witness" (Dk.1230) is denied as speculative, premature and vague;

IT IS FURTHER ORDERED that the government's motion to allow two case agents to be excused from sequestration under Fed.R.Evid. 615 (Dk.1245) is granted;

IT IS FURTHER ORDERED that Timothy Cline's motion to prohibit the government's use of its presentation software to publish the wiretap and undercover recordings at trial (Dk.1256) is denied;

IT IS FURTHER ORDERED that Timothy Cline's motion to prohibit the government from offering or displaying the firearms seized from Cline's residence on March 27, 2000, (Dk.1258) is denied;

IT IS FURTHER ORDERED that Timothy Cline's motion to prohibit mention or evidence of non-testifying co-defendants' guilty pleas (Dk.1260) is denied as moot;

IT IS FURTHER ORDERED that the government's motion to dismiss various charges and to sequentially renumber the remaining counts and proposed summary of indictment (Dk.1265) is granted.