OPINION
{¶ 1} This is an appeal by defendant-appellant, Robert L. Drafton, from a judgment of sentence and conviction entered by the Franklin County Court of Common Pleas following a jury trial in which appellant was found guilty of kidnapping, aggravated robbery, robbery, abduction and having a weapon while under disability.
 {¶ 2} On December 21, 2001, appellant was indicted on two counts of kidnapping, in violation of R.C. 2905.01, two counts of abduction, in violation of R.C. 2905.02, one count of aggravated robbery, in violation of R.C. 2911.01, two counts of robbery, in violation of R.C. 2911.02, and one count of having a weapon while under disability, in violation of R.C. 2923.13. The indictment arose out of an incident occurring August 12, 2001, in which an individual robbed the Airport Duchess convenience store located at 4455 East Fifth Avenue. The matter came for trial before a jury beginning November 13, 2002.
 {¶ 3} On August 12, 2001, at approximately 11:45 a.m., a man with a handgun entered the Airport Duchess; two store employees, Brenda Burton and Belinda Eads, were on duty at the time. A customer and two children were also in the store, and the armed man told these individuals to "get out of there." (Tr. 118.) The man then jumped over the counter, grabbed Burton by the hair and dragged her to an office in the back of the store where Eads was working. The man told Eads to get on the floor; he kicked her and struck her in the side with his gun, telling her not to look at him.
 {¶ 4} The assailant pointed the weapon at Burton's head and ordered her to open the office safe. Burton opened the safe, which contained lottery tickets and extra store keys. The man again grabbed Burton by the hair, leading her to the front area of the store where another safe was located. Burton opened the safe, removed the money, and put it in a bag. The man then took Burton toward the back room again, but Burton was able to enter the office and slam the door, locking it before the assailant could enter. Burton picked up the phone and dialed 911. The man exited the store through a rear door after disabling an alarm by entering password numbers onto a keypad. He drove away in a dark-colored automobile.
 {¶ 5} Appellant's former girlfriend, Brittiany Kocheran, was called as a witness by the state. Appellant moved into Kocheran's residence in early 2001, and during the summer and fall of 2001, Kocheran worked at the Airport Duchess as a cashier. Her duties also included taking the trash out the back security door; employees using that door were required to punch in certain numbers on a keypad to deactivate the alarm system.
 {¶ 6} Appellant would often visit Kocheran at the store and had previously been in the back room. On the date of the robbery, Kocheran was not scheduled to work, and she was at her residence during the morning with appellant. Later that morning, appellant left the residence alone, and Kocheran assumed he was using her vehicle, a blue Pontiac Sunbird. When appellant returned that day, he gave Kocheran between $150 and $170 in cash. Kocheran initially did not ask appellant where he obtained the money. Later, appellant said "he had robbed something." (Tr. 29.)
 {¶ 7} The following day, Kocheran spoke with Columbus police officers. Kocheran told the officers that, a couple of months before the incident, appellant had watched her punch in the security code to the store's back door while she was taking out the trash, and he repeated the code numbers back to her. Appellant had told her not to say anything if she was ever questioned about a robbery or she would be "killed" or "hurt." (Tr. 34.)
 {¶ 8} Columbus police officers lifted a latent fingerprint from the store's counter. At trial, Rhonda Cadwallader, a latent fingerprint examiner with the Columbus Police Department, testified that appellant's fingerprints matched those found on the counter. The store's surveillance tape showed the robber jumping over the counter and placing his hand on the counter, and still photographs made from the surveillance tape were admitted as part of the state's evidence.
 {¶ 9} Tonya Coakley, a manger at the Airport Duchess, testified that during a typical workday, the front counter is wiped down "[h]undreds of times. It may have to get wiped down after every customer depending on how dirty it gets." (Tr. 187.) According to Coakley, approximately $4,480 was missing from the store following the robbery.
 {¶ 10} At the close of the state's case, a stipulation was read to the jury. The stipulation indicated that, on February 27, 1996, appellant entered a guilty plea to aggravated assault with a specification, and he was sentenced to two to five years of incarceration.
 {¶ 11} Appellant testified on his own behalf. Appellant denied robbing the Airport Duchess store August 12, 2001. He stated that he visited the store numerous times to visit his girlfriend, and that his fingerprints could have been placed on the counter during one of those visits.
 {¶ 12} On cross-examination, appellant denied giving his girlfriend $150 or $170 on the date of the incident. Appellant could not recall if his girlfriend drove a blue Pontiac Sunbird in August 2001, and he denied ever owning a .9-millimeter handgun.
 {¶ 13} Following deliberations, the jury returned verdicts finding appellant guilty on all counts.
 {¶ 14} On appeal, appellant sets forth the following assignment of error for review:
The failures of Appellant's trial counsel constituted ineffective assistance, thereby depriving Appellant of his rights as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 15} Under his single assignment of error, appellant asserts that his trial counsel was ineffective, thereby depriving him of a fair trial. Specifically, appellant contends that his counsel's performance was deficient in failing to challenge the admission of fingerprint testimony, and by allowing the jury to consider evidence of a prior felony conviction.
 {¶ 16} In State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, the Ohio Supreme Court noted the applicable standard in considering a claim of ineffective assistance of counsel:
2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976],48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674, followed.)
3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
 {¶ 17} Regarding appellant's claim that his counsel was ineffective in failing to challenge the fingerprint evidence, appellant makes a general claim that fingerprint analysis has been subjected to increased scrutiny by scholarly publications and federal appellate courts. In support, appellant cites a law review article, Epstein, Fingerprints Meet Daubert: The Myth of Fingerprint "Science" is Revealed (2002), 75 So.Cal.L.Rev. 605. The law review article discusses recent challenges to fingerprint analysis under the test set forth in Daubert v. Merrell Dow Pharms., Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786. However, the author of that article acknowledges that, although a number of defense attorneys have filed motions contesting the admissibility of latent fingerprint identification evidence under Daubert, "[t]hus far there is no reported decision granting such a motion." Id. at 649-650.
 {¶ 18} Our research reveals only one case that has cited the above law review article, United States v. Crisp (C.A. 4, 2003), 324 F.3d 261,273 (Michael, J., dissenting). In that case, the majority opinion surveyed cases dealing with challenges to fingerprint analysis following the decision in Daubert, and the court's discussion belies any assertion that federal courts have departed from long-standing views regarding the admissibility of fingerprint identification opinions. Specifically, the majority opinion in Crisp, at 266, states in pertinent part:
Fingerprint identification has been admissible as reliable evidence in criminal trials in this country since at least 1911. * * * While we have not definitively assessed the admissibility of expert fingerprint identifications in the post-Daubert era, every Circuit that has done so has found such evidence admissible. See United States v. Herndandez, 299 F.3d 984
(8th Cir. 2002) (concluding that fingerprint identification satisfies Daubert); United States v. Havvard, 260 F.3d 597, 601 (7th Cir. 2001) (same); United States v. Sherwood, 98 F.3d 402, 408 (9th Cir. 1996) (noting defendant's acknowledgement that "fingerprint comparison has been subjected to peer review and publication," and holding that trial court did not commit clear error where it admitted fingerprint evidence without performing Daubert analysis); see also United States v. Llera Plaza,188 F. Supp.2d 549, 572-73 (E.D.Pa. 2002) (discussing long history of latent fingerprint evidence in criminal proceedings, and citing lack of proof of its unreliability, to hold such evidence admissible); United States v. Joseph, 2001 WL 515213, (E.D.La. May 14, 2001) (observing that "fingerprint analysis has been tested and proven to be a reliable science over decades of use for judicial purposes"); United States v. Martinez-Cintron, 136 F. Supp.2d 17, 20 (D.P.R. 2001) (noting that questions of reliability of fingerprint identifications can be addressed through vigorous cross-examination of expert witness).
 {¶ 19} The majority opinion in Crisp went on to hold that the defendant "has provided us no reason today to believe that this general acceptance of the principles underlying fingerprint identification has, for decades, been misplaced." Id. at 269.
 {¶ 20} Apart from a general contention that the reliability of fingerprint analysis has been subjected to increased scrutiny by academics, appellant does not state how a more vigorous challenge to the latent fingerprint evidence in the instant case would have prevented its admission. At trial, the state's fingerprint analyst testified that appellant's fingerprint card and the latent print taken from the store's countertop had at least 14 matching points, and that they were made by the same person. According to the witness, standard procedure requires that an examiner find at least eight or more matching ridge characteristics. Appellant does not argue that the fingerprint examiner made a mistake or failed to apply the relevant procedures or methods to the data.
 {¶ 21} While appellant contends his trial counsel failed to vigorously challenge the fingerprint evidence, counsel pursued a theory designed to lessen the significance of the fingerprint evidence; specifically, that appellant had been in the store on numerous occasions visiting his girlfriend, who was a cashier, and that his prints were likely on the counter because he had been standing in front of the counter during such visits. As previously noted, appellant testified on his own behalf and stated that he often visited his girlfriend at the store. Trial counsel also focused upon the fact that another print had been taken from a stool in the back of the store near the door, and that this print did not match appellant's fingerprint. Further, counsel elicited during cross-examination that the state's fingerprint examiner had only been asked to compare appellant's fingerprints with those taken from the scene. Part of the defense theory of the case was that a former employee of the convenience store, who had been terminated after money was discovered missing, had knowledge of the store's security system and a motive to rob the store. Upon review, we find that counsel's performance was part of a reasonable trial strategy, and appellant has not shown how a more rigorous cross-examination of the state's fingerprint analyst would have changed the outcome of this case.
 {¶ 22} Appellant also claims that his trial counsel was ineffective in allowing the jury to hear evidence of a prior conviction. However, as noted by the state, appellant's trial counsel made a strategic decision to have the weapons under disability count tried to the jury rather than the court and, because appellant chose to testify on his own behalf, the conviction would have been admissible before the jury in any event. We note that appellant does not contend the prosecution attempted to prejudicially exploit evidence of his prior conviction, nor does the record indicate that the state used the conviction in an attempt to impeach his credibility. Ultimately, the issue raised by appellant is one of trial strategy, and appellant has failed to rebut the presumption that "under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland v. Washington (1984), 466 U.S. 668,689, 104 S.Ct. 2052.
 {¶ 23} Based upon the foregoing, appellant has failed to show that his trial counsel was ineffective, and his single assignment of error is overruled.
 {¶ 24} Having overruled appellant's assignment of error, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
PETREE, P.J., and WATSON, J., concur.